IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DUSTIN ISENHART**, *et al.* ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 16-cv-193 SMY/PMF |
| ) | |
| **NRT TECHNOLOGY CORP.**, *et al.* ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO STAY**

**COMES NOW** Plaintiff, by and through his attorneys, and for his Response in Opposition to Defendants' Motion to Stay, states as follows:

**INTRODUCTION**

Defendants quite evidently deploy this Motion to Stay as both a delay tactic and as a means of belittling the far-reaching harm that thousands of consumers have experienced and will experience as a result of Defendants' willful actions. While Defendants claim that no actual harm has occurred or will occur, Defendants' cavalier attitude regarding harm in their breaking of the Fair and Accurate Credit Transactions Act ("FACTA") and hoping that no one will be hurt is the very kind of recklessness behavior that this law was meant to prevent.

Furthermore, Defendants' conduct has already started to create a theme of delay. Defendants' initial communication to Plaintiff's counsel speciously sought additional time, up to and including April 27, 2016, to properly respond to Plaintiff's Complaint. In good faith, Plaintiff consented to the additional time. Instead of filing an answer to the Complaint, Defendants surprised Plaintiff with aMotion to Stay.

Nevertheless, this Court is not obligated to stay this litigation purely on the off chance that

1

the Supreme Court in *Spokeo, Inc. v. Robins*, No. 13-1339 (U.S. Apr. 27, 2015) **might** dramatically change the law, and Defendants have failed to meet the requisite burden of demonstrating that any unique circumstances exist that would justify a stay. A stay would only create evidence spoliation issues and serve to prejudice Plaintiff and the Class members. Furthermore, even if statutory damages become unavailable to Plaintiff and the Class members, actual damages will remain an option under the law, meaning that this litigation will continue even if *Spokeo* limits the availability of statutory damages under FACTA.

## ARGUMENT

The power to stay is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Jackson v. Van Kampen Series Fund, Inc.*, Nos. 06-cv-944-DRH, 06-cv-994-DRH, 2007 WL 1532090, at *2 (S.D. Ill. May 24, 2007) (quoting *Landis v. North American Co.*, 299 U.S. 248, 254 (1936)); *see also Pfizer v. Apotex, Inc.*, 640 F. Supp. 2d 1006, 1007 (N.D. Ill. 2009). District courts manage their dockets by the "exercise of judgment, which must weigh competing interests and maintain an even balance," and the party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Landis*, 299 U.S. at 254-55. "Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Id.*; *see also Clinton v. Jones*, 520 U.S. 681, 708, 710 (1997) (explaining that the party proposing the stay bears the burden of establishing its need and "[l]ike every other citizen . . . [a plaintiff] has a right to an orderly disposition of her claims").

In order to determine whether to grant a stay, the courts in this circuit apply a three-part

test. "In ruling on a motion to stay proceedings, a court shall consider the likelihood of a stay to: '(1) unduly prejudice or tactically disadvantage the non-moving party, (2) simplify the issues in question and streamline the trial, [and] (3) reduce the burden of litigation on the parties and on the court.'" *Helferich*, 2012 WL 1813665 at *1 (citing *Fujitsu Limited v. Tellabs Operations, Inc.,* Nos. 08–CV–3379, 09–CV–4530, 2012 WL 987272, at *3 (N.D. Ill. March 21, 2012)). The burden is on the party moving for the stay. *Id; see also Itex, Inc. v. MF & H Textiles,* 2010 WL 3655990, at *2 (N.D. Ill. Sept. 9, 2010). Finally, "[a] stay is no ordinary measure", and "if there is even a fair possibility that the stay ... will work damage to someone else," the party seeking the stay "must make out a clear case of hardship or inequity in being required to go forward.' *Id*. (quoting *Landis v. North American Co.,* 299 U.S. at 254).

### A. PLAINTIFF HAS STANDING AND A STAY WILL UNDULY PREJUDICE AND DISADVANTAGE PLAINTIFF AND THE CLASS MEMBERS.

Courts in the Seventh Circuit have found it necessary to weigh the competing interests of those who will be affected by the stay. *In re Pradaxa Prods. Liab. Litig.*, 2012 WL 2357425, at *1 (S.D. Ill. June 20, 2012); s*ee also Itex, Inc. v. Mount Vernon Mills, Inc.,* 2010 WL 3655990, at *2 (N.D. Ill. Sept. 9, 2010)*; Helferich Patent Licensing, LLC v. New York Times*, Co., 2012 WL 1813665, at *1 (N.D. Ill. May 8, 2012). A stay is not appropriate if, on balance, any possible benefits of the stay are outweighed by the potential harm to Plaintiff and the Class.  *See Landis*, 299 U.S. 248, 254 (1936).

Here, Defendants misrepresent the nature of this case in order to support its argument. Defendants incorrectly and dismissively assert that a stay of the entire case is warranted based on the supposed fact that no actual harm has occurred. The nature of this particular case—claims of a serious violation of statute designed specifically for the protection of consumer's identities—mean that the harm to Plaintiffs is continuing every hour of every day as there are potentially thousands

3

of credit and debit card receipts that are circulating in the black markets of the world. Indeed, Defendants cannot escape the fact that Congress enacted such legislation to serve the specific purpose of guarding consumers against a very real and specific harm – identity theft. Moreover, the harm that can and has resulted by Defendants' willful failure to adhere to the law is severe in numerous ways, creating continuing financial, psychological and emotional harm to Plaintiff and the Class members.

Congress did not pass a law to prevent imagined harm. After multiple, lengthy hearings on this topic with numerous industry experts across the country, Congress intentionally chose these digit limitations because it understood that damage occurs when more digits are shown. By printing more digits on the receipt than should have been printed, Defendants have provided "a piece of the puzzle that would assist a wrongdoer in committing fraud,"[1] thus increasing the risk that Plaintiff and the Class members can become victims of credit and debit card fraud.

This Circuit has identified the harm unleashed upon society by violating FACTA: extra information found on receipts "can be used to bolster the credibility of a criminal who is making pretext calls to a card holder in order to learn other personal confidential financial information. Expiration dates are solicited by criminals in many e-mail phishing scams ..., are one of the personal confidential financial information items trafficked in by criminals ..., are described by Visa as a special security feature ..., [and] are one of the items contained in the magnetic stripe of a credit card, so it is useful to a criminal when creating a phony duplicate card."[2]

Exposing more digits of a credit or debit card number than allowed by FACTA is harmful

---

[1] Quotation from a Federal District Court when referencing the statements of Mr. Patrick Faith, the Vice President of Encryption and Authentication Processing for Visa U.S.A. Inc. See *Ramirez v. Midwest Airlines, Inc.*, 537 F. Supp. 2d 1161, 1167 (D. Kan. 2008).
[2] *Redman v. RadioShack Corp.*, 768 F.3d 622, 626-27 (7th Cir. 2014) citing Don Coker, "Credit Card Expiration Dates and FACTA," HGExperts.com, www.hgexperts.com/article.asp?id=6665.

4

because sophisticated hackers can exploit these additional numbers for their own personal gain. By using the logic of the algorithms upon which credit and debit cards are based (such as the Luhn algorithm) or even more innovative methods that are continually being developed in our society, hackers can predict all of the numbers in a given credit card or debit card.[3, 4]

The same expert cited above by this Circuit, Mr. Don Coker, also points out that, since a typical consumer has nine credit cards, "a typical consumer could be at risk for at least $450.00 (9 X $50.00) plus the time and effort required in order to notify all nine credit card companies (most likely multiple times), plus the time and effort required in order to notify all three credit bureaus (most likely multiple times), plus have to monitor very closely their future credit card statements in future months in order to make sure that all charges are legitimate, as well as monitor their credit card accounts to make sure that the terms of their accounts were not changed for the worse as a result of the criminal activities, and also monitor their credit report in order to insure that the criminal did not create any new fraudulent credit card or other accounts. Clearly, it would be a lot easier if all merchants would simply comply with the clear legal requirements of FACTA and make life tougher for criminals."[5]

In other words, by making Plaintiff and the Class members potential victims of identity fraud, they now have actual damages in the form of stress and expense (both in time and money) of having to take remedial measures. Even though these remedial measures cost time and money, which are damages unto themselves along with the stress of having to deal with all of this, they must be taken to prevent further harm and damage. As Mr. Coker elaborates: "An October 22,

---

[3] "A $10 Tool Can Guess (And Steal) Your Next Credit Card Number," <u>Wired</u>, November 24, 2015, https://www.wired.com/2015/11/samy-kamkar-10-dollar-tool-can-guess-and-steal-your-next-credit-card-number/.
[4] "How Credit Card Numbers Work," Nick Berry of Data Genetics, <u>Gizmodo</u>, January 8, 2014, http://gizmodo.com/how-credit-card-numbers-work-1493331190.
[5] *Matthews v. United Retail Incorporated*, 1:07-cv-02487, Doc. 34, Att. 1, Ex. 9, 2007 WL 7212657, ¶ 10 (N.D. Ill. January 2, 2008).

2007, article in Information Week magazine states that a study just released by Utica College's Center for Identify Management and Information Protection stated that the average overall loss from an identity theft event is $31,356. And it is a fact that these losses are a reduction of profits for whoever has to absorb them, and that they are reflected in higher prices for everyone that purchases goods and services."[6] That $31,356.00 that Plaintiff and the Class members are now more likely to suffer due to Defendants' failures was stated in 2007 dollars.

Furthermore, Defendants argue that Plaintiff and the Class members will suffer no harm at all from a stay. This bold assumption – like Defendants' bold and reckless assumption that FACTA non-compliance does not cause harm – is mistaken and does not discharge Defendants' burden to make out a clear case of hardship or inequity in Defendants being required to go forward with this litigation. Plaintiff and the Class members are entitled to a reasonably expedient discovery process leading to an expedient resolution, especially under the circumstances, without the concern for evidence spoliation. *See New York v. Hill*, 528 U.S. 110, 117 (2000) ("Delay[ing litigation] can lead to a less accurate outcome as witnesses become unavailable and memories fade."); *Clinton v. Jones*, 520 U.S. 681, 707–08 (1997) ("[Delaying a litigation] increase[s] the danger of prejudice resulting from the loss of evidence, including the inability of witnesses to recall specific facts, or the possible death of a party."); *Constantino v. City of Atlantic City*, No. 13-6667 (RBK/JS), 2015 U.S. Dist. LEXIS 18666, at *9 (D.N.J. Feb. 17, 2015) ("If a stay is granted [P]laintiff's efforts to promptly and efficiently prosecute h[is] case would be hampered.").

A very real concern here is that despite halting its practices after being sued following years of knowing and willful violations, Defendants have not notified their customers of the violations of federal law. These customers need to be put on notice as soon as practicable, which Defendants

---

[6] *Id*. at ¶ 11.

are clearly attempting to avoid, and be able to take proactive measures to mitigate their damages. Defendants' stay severely prejudices the class in that aspect alone.

Another primary issue in this case is what Defendants knew, and when they knew it, as their knowledge goes to their willfulness in violating FACTA. With each passing day that a stay would take place, the illegal printed receipts may be discarded, destroyed or sold on the black market. The loss of these receipts has become a real concern since Defendants have already repaired the offending ATMs, apparently throughout the nation. See Exhibit A – Affidavit of Zachary Lawn. Furthermore, to date, no depositions have been taken and Defendants' knowledge grows staler by the day. Defendants' contention that delaying this litigation for a (speculative) couple of months will have no impact on the quality of the evidence is simply unfounded. *Cf. Larson v. Trans Union LLC*, No. 12-cv-05726-WHO, 2015 U.S. Dist. LEXIS 83459, at *23 (N.D. Cal. June 26, 2015) (granting stay in light of *Spokeo* certiorari where "many key witnesses have already been deposed [and] their memories can be refreshed at trial by their deposition transcripts, or, if they are unavailable, their deposition transcripts can be read into the record").

Despite the nature of this case, it is absurd that Defendants now argue that this entire litigation should be halted until approximately June or July of this year because *Spokeo* will impact a possible certification of a statutory damages class for a willful violation of the Fair Credit Reporting Act ("FCRA"). Defendants are mistaken in asserting that *Spokeo* will affect even the single statutory damages willful violation claim in this case. Unlike the plaintiffs in *Spokeo*, Plaintiff and the Class suffered cognizable actual injury under the FCRA, which underpins their statutory damages claim. As a result, this litigation will proceed even if statutory damages are limited or even eliminated as an option for Plaintiffs and the Class members. As a result, Defendants will not be prejudiced if a stay is not granted while, because of evidence spoliation and

the lack of notification to their victims, Plaintiffs will be harmed if this Court chooses to stay this litigation. Therefore, Defendants cannot satisfy their heavy burden to show that a stay is warranted in this case, and its motion should therefore be denied.

**B. A STAY WILL NOT STREAMLINE THE TRIAL, SIMPLIFY THE ISSUES IN QUESTION AS THE ISSUES ARE RAISED, AND THE QUESTION UPON WHICH THE SUPREME COURT IS SET TO RULE IN *SPOKEO* WILL NOT IMPACT THIS LITIGATION IN ANY MEANINGFUL WAY.**

Defendants' motion largely confuses the Article III holding of *Spokeo* with the elements prescribed by Congress for a willful violation of the FCRA. Despite Defendants' erroneous assumption, especially in light of the current makeup of the Supreme Court, there is no basis to conclude that the Ninth Circuit's holding in *Spokeo* will be reversed. But even if it is, such a reversal would not impact this case.

Federal court precedent on staying litigation is grounded on the principle that, when an emerging area of the law is plagued by uncertainty, the need for timely dispensation of justice yields to the need for legal clarity. *See Landis*, 299 U.S. at 256 (deeming stay appropriate when pending bellwether trial on validity of new statute "may not settle every question of fact and law in [the parallel] suits [concerning the same issue], but in all likelihood it will settle many and simplify them all"). It is therefore inappropriate to stay litigation absent some degree of certainty that the *Spokeo* decision will, regardless of its outcome, aid in resolution of the instant action. This ordinarily occurs when a case implicates novel, controversial legal theories, and when the impending Supreme Court decision will, one way or the other, offer guidance on the instant substantive issues. Such is not the case here. *See Bais Yaakov of Spring Valley v. Peterson's NelNet, LLC*, No. 11-0011, 2011 U.S. Dist. LEXIS 102743, at *1–5 (D.N.J. Sept. 12, 2011) (granting stay in light of pending Supreme Court decision as to contentious question of whether federal courts have federal question jurisdiction over Telephone Consumer Protection Act claims).

*Spokeo* examines the pleading requirements for Article III standing. In that case, "Spokeo

8

moved to dismiss [the complaint] for lack of subject-matter jurisdiction on the ground that Robins lacked Article III standing." *Robins v. Spokeo, Inc*., 742 F.3d at 411. The Ninth Circuit separately stated the well-known rule that a "statutory cause of action does not require a showing of actual harm when a plaintiff sues for willful violations [under FCRA] § 1681n(a)." *Id.* at 412. But this separate finding is not constitutional in nature. It merely construes FCRA section 1681n, and follows other circuit courts, including this one, which set forth the statutory requirements or elements for a cause of action for willful non-compliance of the FCRA. *See* 15 U.S.C. § 1681n(a) (no causation or actual harm requirement); *see also Murray v. GMAC Mortg. Corp.*, 434 F.3d at 952–53 (ruling that the FCRA "provide[s] for modest damages without proof of injury"); *Beaudry v. TeleCheck Servs., Inc.*, 579 F.3d 702, 705–07 (6th Cir. 2009) (ruling that the FCRA permits a recovery when there are no clearly measurable or actual damages).

The fact that Plaintiff and the Class members he will seek to represent are not *required* to show actual harm to show a willful violation of the FCRA simply is not tantamount to a finding that they lack Article III standing, as Defendants suggest. Rather, it is simply the burden of proof that Congress prescribed for a particular claim, which entitles consumers to pre-set statutory damages in the range of $100-$1,000 so that they do not have to *prove* their damages, but they can always elect to pursue actual damages instead of statutory damages should the statutory damages option become untenable. *Tremble v. Town & Country Credit Corp.*, No. 05 C 2625, 2006 WL 163140, at *3 (N.D. Ill. Jan. 18, 2006) (FACTA "unambiguously allows recovery of any actual damages sustained *or* damages of not less than $100 or more than $1000. The provision is worded in the disjunctive; "or" means or."). Furthermore, by prescribing this burden of proof, Congress realized that some consumer injuries may be small or difficult to calculate. The Seventh Circuit Court of Appeals even explained that the fact that "actual loss is small and hard to quantify is why

9

statutes such as the Fair Credit Reporting Act provide for modest damages without proof of injury." *Murray v. GMAC Mortg. Corp.,* 434 F.3d at 952-53. *See also Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1310 (11th Cir. 2009) ("This court has recognized that even though statutory damages may be used in cases where no actual damages were incurred, they are also often employed where damages are difficult or impossible to calculate.").

Here, the concept that a stay based on *Spokeo's* decision will simplify the issues or streamline the trial is farfetched. In this Circuit, along with the vast majority of federal appellate courts, Plaintiff and the Class members enjoy Article III standing to pursue their FACTA claim, and there is a strong likelihood that the Supreme Court will resolve *Spokeo* in a manner that has no bearing on this case whatsoever. *Melnarowicz*, 2015 U.S. Dist. LEXIS 107841, at *6 ("[I]f and until th[e] day" when a Supreme Court decision in *Spokeo* overturns the current precedent on Article III standing, [a] plaintiff alleging injury from statutory violations enjoys standing); *Backhaut*, 2015 U.S. Dist. LEXIS 107519, at *16–17 (plaintiff injured by statutory violations has Article III standing under current precedent "in the absence of a contrary decision from the United States Supreme Court [in *Spokeo*]"); *Gillespie*, 2015 U.S. Dist. LEXIS 96211, at *13 ("Unless and until the Supreme Court says otherwise," [a] plaintiff injured by statutory violations has Article III standing). Like Defendants' misguided perspective on the injury suffered by Plaintiff and the Class Members, Defendants' overly simplistic logic renders the issue-simplification consideration meaningless—whenever the Supreme Court grants certiorari in a particular case, any decision it might issue has the potential for far-reaching effects. Given that the issue of how to prove an FCRA section 1681n willful violation is *not* before the Supreme Court in *Spokeo* along with the utter lack of any certainty that a Supreme Court ruling in *Spokeo* would alter the course of this litigation in the slightest, imposing a stay now would be imprudent.

**C. DECLINING TO IMPOSE A STAY WOULD NOT PREJUDICE DEFENDANTS BECAUSE THEY WILL HAVE TO LITIGATE THIS CASE EVEN IF *SPOKEO* COMES DOWN IN THEIR FAVOR.**

Defendants appear to argue that having to continue to litigate this case is a hardship. But being required to defend a suit, without more, does not constitute a clear case of hardship or inequity which might require a stay. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005). On the contrary, should the stay, which would last until June 2016, not be granted, Defendants would simply not be burdened at all—it would simply mean that they would continue to defend against Plaintiff and the Class member's valid FACTA claims for approximately a month pursuant to Seventh Circuit law. *See generally Wolf v. Lyft, Inc.*, No. C 15-01441 JSW, 2015 U.S. Dist. LEXIS 94234, at *6 (N.D. Cal. July 20, 2015) ("[While defendant] argues [in its brief] that it 'will be irreparably harmed by being forced to litigate if this Court ultimately lacks jurisdiction[,]' . . . [t]he fact that [defendant] might be 'required to defend a suit, without more, does not constitute a clear case of hardship or iniquity within the meaning of *Landis*.'") (quoting *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005)).

Indeed, given that Plaintiffs will simply opt to request actual damages instead of statutory damages if *Spokeo* does not go Plaintiffs' way, Defendants will be forced to litigate this case even if *Spokeo* comes down hard against statutory damages as a remedy. The only difference will be that Plaintiffs may need to produce some evidence of actual damages during discovery, which will not meaningfully prejudice Defendants. *Tarvin v. Bd. of Educ. of E. St. Louis Sch. Dist. No. 189*, No. CIV.09-655-GPM, 2010 WL 2348612, at *1 (S.D. Ill. June 10, 2010); see also *Aliano v. Amerigas Partners, L.P.*, No. 07 C 4110, 2008 WL 4671716, at *2 (N.D. Ill. Oct. 22, 2008) (finding that Defendants will not be prejudiced because, "while some limited amount of additional discovery may be required, it should not be extensive", and granting the plaintiffs' motion for leave to amend to plead actual damages under FACTA when statutory damages were eliminated

as an option).

Additionally, as stated above, this class action has issues and parties that are distinct from those in *Spokeo* and, should Defendant prevail on certain issues in that litigation and believe those rulings to have preclusive effect in this litigation, they are certainly free to file a motion and request relief from this Court. If the case holds some reaching impact – which Plaintiff and the Class members strongly contend it will not – Defendants may file a motion at that time. Therefore, Defendants' Motion to Stay runs contrary to well-established principles of judicial expediency and fairness, and should be denied. Plaintiff and the Class members ask that this Court not allow evidence to be eliminated for a pointless stay that will not increase the efficiency of this litigation as discussed, *supra*.

## **CONCLUSION**

Plaintiff and the Class members' likely prejudice caused by granting a stay, coupled with Defendants' failure to demonstrate sufficient burden on judicial resources or to themselves in the absence of a stay, weigh heavily in favor of moving forward with this case. Given that this case will proceed regardless of what happens in *Spokeo*, a stay will only serve to allow evidence to be lost and harms to the class to be concealed. The only difference that *Spokeo* may cause is forcing Plaintiffs to adduce extra expert testimony on the issue of actual damages. For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendants' request for a temporary stay and for such other and further relief as this Court deems just and proper.

Dated: May 11, 2016                              Respectfully submitted,

**HOLLAND LAW FIRM**

By:  *s/R. Seth Crompton*
     R. Seth Crompton
     300 N. Tucker, Suite 801
     St. Louis, MO 63101
     Phone:      (314) 241-8111
     Facsimile:  (314) 241-5554
     Email:      scrompton@allfela.com

*Attorneys for Plaintiff*


## CERTIFICATE OF SERVICE

I hereby certify that, on May 11, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties to this action.

   *s/R. Seth Crompton*