## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **DUSTIN ISENHART**, individually and on behalf of all others similarly situated | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 16-cv-193 SMY/PMF |
| v. | ) ) | |
| **NRT TECHNOLOGY CORP.**, *et al*. | ) ) | |
| Defendants. | ) | |

### SECOND AMENDED COMPLAINT

**COMES NOW** Plaintiff, Dustin Isenhart ("Plaintiff"), by and through his attorneys, and brings this action on behalf of himself and all persons similarly situated, and, except as to those allegations that pertain to Plaintiff or his attorneys, which allegations are based upon personal knowledge, alleges the following upon information and belief:

### Introduction and Background

1.       Plaintiff brings this action to secure redress, on behalf of both himself individually, and others similarly situated, for the willful and reckless violations by NRT Technology Corp. ("NRT") and Tropicana Entertainment Inc. ("Tropicana") (collectively, "Defendants", each, a "Defendant") of the Fair and Accurate Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act ("FCRA").

2.       One provision of FACTA, codified as 15 U.S.C. §1681c(g), provides that:

> "No person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number … upon any receipt provided to the cardholder at the point of sale or transaction."

3.       This "truncation requirement" is designed and intended to prevent identity theft. The Federal Trade Commission ("FTC") estimates that over 9,000,000 people each year have

their identity assumed by criminals for financial gain, causing losses in excess of $50,000,000,000.

4.     Identity thieves can use credit card receipts to engage in fraudulent transactions by gaining sensitive information regarding a consumer's credit or bank account. The thief does this by gaining access to the receipt  provided to the consumer during a point of sale transaction, which, through any number of ways,  falls into the thief's hands. Such identity thieves are known as "carders" or "dumpster divers." This "low tech" method is more common than the use of sophisticated electronic wizardry to obtain the information. *See e.g.*, Robin Sidel, "Identity Theft – Unplugged – Despite the High Tech Treat, When You Get Ripped Off It's Usually Still the Old Way," Wall Street Journal, Oct. 5, 2006, p. B1.

5.     To curb this means of identity theft, Congress prohibited merchants who accept credit cards and debit cards from issuing electronically-generated receipts that display more than the last five digits of the card number.

6.     FACTA was enacted on December 4, 2003. FACTA, which is a part of the FCRA, 15 U.S.C. §§1681, *et seq*., gave merchants who accept credit or debit cards up to three years to comply with the truncation requirements. 15 U.S.C. §§1681c(g)(3)(A)-(B). FACTA required full compliance with its provisions no later than December 4, 2006 for all machines in use and in all transactions. 15 U.S.C. §1681c(g)(3)(A).

7.     FACTA provides two compliance deadlines: (1) machines brought into use before January 1, 2005 must have been brought into full compliance before December 4, 2006; and (2) machines first used after January 1, 2005 were required to fully comply immediately.

8.     The truncation requirement was widely publicized among retailers and the FTC.

9.     For example, in response to earlier state legislation enacting similar truncation requirements, on March 6, 2003, the CEO of Visa USA, Carl Pascarella, explained that:

> "Today, I am proud to announce an additional measure to combat identity theft and protect consumers. Our new receipt truncation policy will soon limit cardholder information on receipts to the last four digits of their accounts. The card's expiration date will be eliminated from receipts altogether. . . . The first phase of this new policy goes into effect July 1, 2003 for all new terminals. . . . ."[1]

10.    Within 24 hours, MasterCard and American Express announced they were imposing similar requirements.

11.    The card issuing organizations proceeded to require compliance with FACTA by contract, in advance of FACTA's mandatory compliance date.

12.    For instance, the August 12, 2006 edition of "Rules for Visa Merchants" (p. 62), which is distributed to and is binding upon all merchants that accept Visa cards, expressly requires that "only the last four digits of an account number should be printed on the customer's copy of the receipt." These statements were accompanied by a picture of a receipt showing precisely what had to be removed. Visa required complete compliance by July 1, 2006, five months ahead of the statutory deadline.

13.    Because a handful of large retailers did not comply with their contractual obligations with the card companies and the straightforward requirements of FACTA, Congress passed a law absolving all *past* violations of FACTA. *See* The Credit and Debit Card Receipt Clarification Act of 2007, Pub. L. No. 110-241, 122 Stat. 1565 (2008).

14.    Importantly, the Clarification Act did not amend FACTA's requirements in any way.  Instead, it simply provided amnesty for past violators up to June 3, 2008.

---

[1] "Visa USA Announces Account Truncation Initiative to Protect Consumers from ID Theft; Visa CEO Announces New Initiative at Press Conference With Sen. Dianne Feinstein," <u>PR Newswire</u>, March 6, 2003, http://www.prnewswire.com/news-releases/visa-usa-announces-account-truncation-initiative-to-protect-consumers-from-id-theft-74591737.html.

15.     Card processing companies continued to alert merchants, including Defendants, of FACTA's requirements. According to a Visa Best Practice Alert in 2010:

> "Some countries already have laws mandating PAN truncation and the suppression of expiration dates on cardholder receipts. **For example, the United States Fair and Accurate Credit Transactions Act (FACTA) of 2006 prohibits merchants from printing more than the last five digits of the PAN** or the card expiration date on any cardholder receipt**.** (Please visit http://www.ftc.gov/os/statutes/fcrajump.shtm for more information on the FACTA.)"

16.     The document further advises merchants to:

> "Disguise or **suppress all but the last four digits** of the PAN, and suppress the full expiration date, on the cardholder's copy of a transaction receipt created at a **point of sale (POS) terminal or an ATM** (already required for merchants in the U.S., Europe, and CEMEA; Visa will apply this rule across all regions in the near future to provide global consistency).

> Example:  XXXXXXXXXXXX1234 for the PAN and XXXX for the expiration date."

17.     <u>The guidance above clearly demonstrates that at least Visa believes that ATM transactions are within the intended scope of FACTA.</u>

18.     The Visa U.S.A., Inc. Operating Regulations contains a section entitled "Electronic and Manual Transaction Receipts."  As of May 15, 2007, that section stated:

> "Effective for Electronic Transaction Receipts generated from Point-of-Transaction Terminals installed on or after July 1, 2003, except for the final four digits, the Account Number on the Cardholder's copy of the Transaction Receipt must be disguised or suppressed.  Effective July 1, 2006, except for the final four digits, the Account Number on the Cardholder's copy of the Transaction Receipt **must** be disguised or suppressed."

19.     The same or similar language set forth above also appeared in American Express, Discover and MasterCard Merchant Regulations, which would have been sent to and accepted by Defendants.

20.     Not only were Defendants informed that they could not print more than the last five digits, they were contractually prohibited from doing so. Defendants accept credit and debit

cards from all major issuers; these companies set forth requirements that merchants, including Defendants, must follow, including FACTA's redaction and truncation requirements.

21. By failing to comply with FACTA's truncation requirement and printing private, protected information on receipts, Defendants have willfully and recklessly violated the law and failed to protect Plaintiff and the Class members against identity theft and debit and credit card fraud. By printing more digits on the receipt than should have been printed, Defendants have actually harmed Plaintiff and the Class members because Defendants have increased the risk that Plaintiff and the Class members can become victims of credit and debit card fraud by providing "a piece of the puzzle that would assist a wrongdoer in committing fraud."[2]

22. Indeed, the United States Court of Appeals, Seventh Circuit, citing to FACTA expert Don Coker, identified the harm unleashed upon society by violating FACTA: extra information found on receipts "can be used to bolster the credibility of a criminal who is making pretext calls to a card holder in order to learn other personal confidential financial information. Expiration dates are solicited by criminals in many e-mail phishing scams ..., are one of the personal confidential financial information items trafficked in by criminals ..., are described by Visa as a special security feature ..., [and] are one of the items contained in the magnetic stripe of a credit card, so it is useful to a criminal when creating a phony duplicate card."[3]

23. In addition, exposing more digits of a credit or debit card number than allowed by FACTA is harmful because sophisticated hackers can then more easily exploit these numbers to predict all of the numbers in a given credit card or debit card by using the logic of the algorithms

---

[2] Quotation from a Federal District Court when referencing the statements of Mr. Patrick Faith, the Vice President of Encryption and Authentication Processing for Visa U.S.A. Inc. See *Ramirez v. Midwest Airlines, Inc.*, 537 F. Supp. 2d 1161, 1167 (D. Kan. 2008).
[3] *Redman v. RadioShack Corp.*, 768 F.3d 622, 626-27 (7th Cir. 2014) citing Don Coker, "Credit Card Expiration Dates and FACTA," HGExperts.com, www.hgexperts.com/article.asp?id=6665.

upon which credit and debit cards are based (such as the Luhn algorithm) or even more innovative methods that are continually being developed in our society.[4],[5]

24.    Mr. Coker, the same expert cited above by the Seventh Circuit, also points out that, since a typical consumer has nine credit cards, "a typical consumer could be at risk for at least $450.00 (9 X $50.00) plus the time and effort required in order to notify all nine credit card companies (most likely multiple times), plus the time and effort required in order to notify all three credit bureaus (most likely multiple times), plus have to monitor very closely their future credit card statements in future months in order to make sure that all charges are legitimate, as well as monitor their credit card accounts to make sure that the terms of their accounts were not changed for the worse as a result of the criminal activities, and also monitor their credit report in order to insure that the criminal did not create any new fraudulent credit card or other accounts. Clearly, it would be a lot easier if all merchants would simply comply with the clear legal requirements of FACTA and make life tougher for criminals."[6]

25.    In other words, because Plaintiff and the Class members are now potential victims of identity fraud, they now have the stress and expense (both in time and money) of having to take remedial measures. For example, in addition to the other problems discussed above, Plaintiffs' need to constantly check their credit may cause them to pay for credit monitoring services. Plaintiffs should take remedial measures, too. As Mr. Coker elaborates: "An October 22, 2007, article in Information Week magazine states that a study just released by Utica College's Center for Identity Management and Information Protection stated that the average overall loss from an identity theft event is $31,356. And it is a fact that these losses are a

---

[4] "A $10 Tool Can Guess (And Steal) Your Next Credit Card Number," Wired, November 24, 2015, https://www.wired.com/2015/11/samy-kamkar-10-dollar-tool-can-guess-and-steal-your-next-credit-card-number/.
[5] "How Credit Card Numbers Work," Nick Berry of Data Genetics, Gizmodo, January 8, 2014, http://gizmodo.com/how-credit-card-numbers-work-1493331190.
[6] Matthews v. United Retail Incorporated, 1:07-cv-02487, Doc. 34, Att. 1, Ex. 9, 2007 WL 7212657, ¶ 10 (N.D. Ill. January 2, 2008).

reduction of profits for whoever has to absorb them, and that they are reflected in higher prices for everyone that purchases goods and services."[7] That $31,356.00 that Plaintiff and the Class members are now more likely to suffer due to Defendants' failures was stated in 2007 dollars.

26.     Meanwhile, the costs of simply complying with FACTA are much lower.

27.     Plaintiff and the Class members bring this action against Defendants based on their violation of 15 U.S.C. §§1681p., *et seq*. Plaintiff and the Class members seek statutory damages, attorney's fees, costs, and such other relief as the Court deems proper, including punitive damages. By requesting statutory damages, Plaintiff and the Class members merely seek to exercise their right to not have to prove their individual and collective actual damages, and they expressly state that they have been harmed, both by being denied their legal right to receive a FACTA-compliant receipt and at least in the other ways described above.

**Jurisdiction and Venue**

28.     This Court has subject matter jurisdiction under 15 U.S.C. §1681p ("Actions to enforce liability … may be brought … in any … court of competent jurisdiction…").

29.     Venue is proper in this District because a substantial part of wrongful acts that form the basis of this Complaint occurred in this District and because this Court has personal jurisdiction over both Defendants. Plaintiff is himself a resident of this District as are many of the Class members.

30.     This Court may properly exercise personal jurisdiction over Defendants because the Lumière Casino and Hotel (the "Casino") is situated on the border of Illinois and Missouri, serves many Illinois residents, and purposely avail themselves of the business of the residents of several States, including Illinois. The Casino is less than one-third of a mile from the Illinois border, so its physical presence is approximately in Illinois as well as Missouri.

---

[7] *Id*. at ¶ 11.

31.    Indeed, NRT is registered as a foreign corporation in the State of Illinois and maintains a registered agent in the State of Illinois for service of process.

32.    Like NRT, Tropicana also transacts business in the State of Illinois. Tropicana and Tropicana St. Louis LLC intentionally market the Casino to the general public in the State of Illinois by means of billboards, golf tournament sponsorships, internet advertising and other means of advertising.

33.    Furthermore, this Court has personal jurisdiction over Defendants because Defendants conduct substantial business within the State of Illinois such that they have significant, continuous, systematic and pervasive contacts with the State of Illinois. Furthermore, because the Casino's approximate physical presence is within Illinois, the torts complained of in this Complaint occurred in Illinois as well as in the State of Missouri.

**Parties**

34.    Plaintiff is a natural person currently residing in Madison County, Illinois.

35.    NRT is a Canadian corporation that operates "as a worldwide casino payment solution provider," and it provides automatic teller machines ("ATMs") throughout the world, including at the Casino. Per its website, NRT processes payments for over 35,000 ATMs in North America, and it settles over $15,000,000,000 while processing over 200,000,000 transactions annually.

36.    Tropicana is a Delaware corporation operating entertainment venues throughout the United States. It runs approximately 400,000 square feet of casino space globally, and it is the parent company of Tropicana St. Louis LLC, which operates the Casino, along with various other subsidiaries that operate Tropicana's other casino locations throughout the United States.[8]

---

[8] http://www.getfilings.com/sec-filings/150226/Tropicana-Entertainment-Inc_10-K/

37.     NRT <u>and Tropicana</u> make <u>NRT's</u> ATMs available to Tropicana's customers in order to sell access to paper money to <u>Tropicana's</u> customers and the service of having that money dispensed <u>so that Tropicana's customers may spend the paper money at Tropicana's casinos, restaurants and other entertainment venues.</u>

38.     <u>Therefore,</u> each Defendant is a "person that accepts … credit cards and debit cards for the transaction of business" within the meaning of FACTA.

<strong><u>Factual Allegations</u></strong>

39.     On January 31, 2016 and February 7, 2016 – a full decade after the truncation requirement became effective – Plaintiff received from Defendants a computer-generated receipt displaying eight (8) digits of Plaintiff's debit card account number for the transaction. These receipts were provided at the Casino. True and correct copies of these receipts (with the debit card numbers redacted) are attached as <u>Exhibit A</u>.

40.     During the transaction, Plaintiff paid $5.00 to NRT each time he used the ATMs in order to receive paper currency from NRT's machines.

41.     <u>On information and belief, Tropicana also received a portion of each $5.00 ATM transaction fee that Plaintiff paid.</u>

42.     <u>If Tropicana did not allow NRT's non-compliant ATMs in the Casino, these ATMs could not process transactions. Therefore, in practice, Tropicana assists NRT with processing these transactions. Tropicana does this so that its customers will exchange paper money for gambling chips and spend money on its food, beverages and entertainment services in addition to taking a portion of the fee that its customers pay at these ATMs.</u>

43.     <u>Despite warnings about the need to comply with FACTA, both Defendants failed to properly truncate these receipts.</u>

- 9 -

44.    When Plaintiff used the ATMs, Plaintiff used at least some of the cash provided by the ATMs to pay for Tropicana's entertainment services, including gambling, food service and beverage service.

45.    Plaintiff noticed that numerous receipts from the Casino's ATMs were placed on top of and near the various ATMs that could be easily picked up without interference by the Casino's staff.

46.    Plaintiff also noticed that the Casino's staff serviced these ATMs.  However, the Casino staff ignored the receipts and continued to carry out their duties <u>instead of preventing these illegal receipts from being around these ATMs</u>.

47.    Plaintiff grabbed a few of the receipts that were nearby the ATMs. True and correct pictures of these receipts (with the credit and/or debit card numbers redacted) are attached as <u>Exhibit B</u>.

48.    Any one of these receipts could have been a stolen identity that Defendants could have prevented by simply redacting more digits on their receipts as the law requires.

## Class Action Allegations

49.    Plaintiff brings this class action on behalf of himself and all others similarly situated as class members pursuant to Rule 23 of the Federal Rules of Civil Procedure.

50.    Plaintiff seeks to represent a National Class defined as follows:

All persons within the United States, within the relevant statute of limitations period, who paid to receive paper currency from NRT ATMs, which printed a receipt containing more than the last five digits of the cardholder's account number.

51.    Plaintiff seeks to represent a National Sub-Class defined as follows:

All persons within the United States, within the relevant statute of limitations period, who paid to receive paper currency from NRT ATMs at a Tropicana casino, which printed a receipt containing more than the last five digits of the cardholder's account number.

Collectively, the National Class and the National Sub-Class are referred to as the "Class".

52.     Excluded from the Class are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Defendants and any entity in which either Defendant has a controlling interest or which has a controlling interest in either Defendant and either Defendant's legal representatives, assigns and successors of either Defendant; and (c) all persons who properly execute and file a timely request for exclusion from the Class.

53.     *Numerosity*:  The members of the Class are so numerous that their individual joinder herein is impracticable. On information and belief, there are more than 10,000 people to whom Defendants provided an electronically printed receipt at the point of a sale or transaction after the applicable statutory deadline, which receipt displays more than the last five digits of the cardholder's debit or credit card number. The precise number of Class members and their identities are unknown to Plaintiff at this time but will be determined through discovery. There are at least seven ATMs at the Casino. Since December 23, 2010, Defendants have performed hundreds of thousands of transactions at the ATMs at this one casino and hotel location. Class action members may be notified of the pendency of this action by mail, the internet and/or publication distribution records of Defendants or third party retailers and vendors.

54.     *Commonality*:  Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to:

(a)     whether both Defendants are a person that accepts debit or credit cards for the transaction of business within the meaning of FACTA;

(b)     whether the receipts generated by Defendants' ATMs violate FACTA's truncation requirements;

(c)     whether both Tropicana and NRT are liable under FACTA; and

(d)     whether either of Tropicana's and NRT's conduct was willful.

55.   *Adequate Representation*:  Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class members he seeks to represent; he has retained counsel competent and experienced in prosecuting class actions, and they intend to prosecute this action vigorously. The interests of the Class members will be fairly and adequately protected by Plaintiff and his counsel.

56.   *Typicality*:  Plaintiff's claims are typical of the claims of the other members of the Class in that Plaintiff used ATMs at a casino that were provided by the exact same ATM vendor as the ATMs used by other members of the Class, and these ATMs were legally non-compliant in the exact same way in that the same eight (8) digits were shown on the machine's printed receipts. Plaintiff's claims are typical of the claims of the other members of the Sub-Class in that the Plaintiff used the offending ATMs at a Tropicana casino.

57.   *Predominance and Superiority*:   The class mechanism is superior to other available means for the fair and efficient adjudications of the claims of Plaintiff and Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish each Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents the potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefit of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## Violation of the Fair and Accurate Transactions Act

58.     Plaintiff realleges and incorporates by reference the above paragraphs as if fully set forth herein.

59.     Defendant violated 15 U.S.C. §1681c(g)(1), which provides that:

"…no person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number … upon any receipt provided to the cardholder at the point of sale or transaction."

60.     The publication of only the last four or five digits of a customer account number significantly limits the extent to which a potential identity thief can effectively use customer receipts disseminated at the point of sale to facilitate identity theft.

61.     Therefore, the failure of the Defendants to truncate the Plaintiffs' card information means that Defendants failed to significantly limit the Plaintiffs' risk of identity theft as the law intended.

62.     With respect to the ATMs that were first placed into use after January 1, 2005, 15 U.S.C. §1681c(g)(3)(B) required immediate compliance with the provisions of 15 U.S.C. §1681c(g)(1).

63.     With respect to the ATMs that were in use before January 1, 2005, if any, 15 U.S.C. §1681(c)(g)(3)(B) required compliance with the provisions of 15 U.S.C. §1681(g)(1) on or after December 4, 2006.

64.     Defendants accept debit and credit cards in the course of transacting business with persons such as Plaintiff and the other members of the Class. In transacting such business, Defendants use ATMs that electronically print receipts for debit and credit card transactions.

65.     After the effective date of the statute, Defendants, at the point of sale or transaction, provided to Plaintiff and each Class member one or more electronically printed receipts failing to comply with the truncation requirement.

66.     Defendants knew or should have known about the truncation requirement because they are leaders in their respective markets, which requires sophisticated business expertise, they have been notified of lack of ATM legal compliance by its former casino customers, current casino customers, at least one financial institution and at least one of its direct competitors, they purposely subject themselves to FACTA by the nature of their business and should be complying with multiple guidelines and regulations, they regularly receive industry trade publications and attend industry conferences in which FACTA would have been a topic, they receive guidance letters from the FTC and other government regulators in which FACTA would have been a topic, they received Visa, American Express, Discover and MasterCard Merchant Regulations in which FACTA would have been a topic, their peers and competitors brought their practices into compliance with FACTA, they received or should have received public notification of the enactment of FACTA, and they regularly employ sophisticated in-house employees and outside counsel who would have or should have alerted Defendants of the enactment of FACTA and the need to comply, and as such, Defendants knew or should have known that their receipts did not comply with this requirement.

67.     In addition, Tropicana knew (and NRT at least should have known) that these receipts were being discarded on and nearby the ATMs, making them ready targets for "carders" or "dumpster divers."

68.     Regardless of what NRT knew about the discarding of receipts, NRT definitely knew about the need for proper FACTA compliance.

69.     On NRT's brochure on its website, it states that, "NRT maintains PCI-compliant systems and processes both within and among its business."

70.    NRT simply ignores that PCI compliance is not FACTA compliance. Per

https://www.pcicomplianceguide.org/pci-faqs-2/#13:

> "PCI DSS requirement 3.3 states "Mask PAN when displayed (the first six and last four
> digits are the maximum number of digits to be displayed)." While the requirement does
> not prohibit printing of the full card number or expiry date on receipts (either the
> merchant copy or the consumer copy), ***please note that PCI DSS does not override any
> other laws that legislate what can be printed on receipts (such as the U.S. Fair and
> Accurate Credit Transactions Act (FACTA) or any other applicable laws)***."[9] (Emphasis
> added.)

71.    Indeed, the FTC has issued rules governing interpretation of the statute that state:

> "According to the federal Fair and Accurate Credit Transaction Act (FACTA), the
> electronically printed credit and debit card receipts you give your customers must shorten
> – or truncate – the account information. You may include no more than the last five digits
> of the card number …. For example, a receipt that truncates a credit card number and
> deletes the expiration date could look like this:
>
> ACCT: ***********12345"

72.    The FTC again warned that the failure to truncate more than the last five digits of

the credit card or debit card number violates the law. Available at

http://www.ftc.gov/opa/2007/05/slipshowing.shtm (last visited June 22, 2016) ("The business

alert advises that merchants who fail to comply with the law could face FTC law enforcement

action, including financial penalties and federally-enforced restrictions or requirements.")

73.    On December 14, 2007, the FTC further stated: "To help make merchants aware

of their responsibility to truncate this information, the Commission's regional offices led a

nationwide campaign that included sending the FTC's Business Alert, "Slip Showing?" to 187

national trade associations. The alert also is available on FTC's Web site www.ftc.gov.

Merchants who fail to comply with the law could face FTC law enforcement action, including

civil penalties of up to $2,500 per violation." See http://www.ftc.gov/opa/2007/12/slip.shtm (last

visited June 22, 2016).

---

[9] *Id.*

74.     The May 2007 FTC business alert was also posted on the Better Business Bureau's website. Available at http://www.bbb.org/us/article/4425 (last visited June 22, 2016).

75.     On information and belief, this information was received by Defendants. Defendants further knew of the card operating regulations of Visa, MasterCard, Discover and American Express, and Defendants knew that they had to comply with them. All of these regulations specifically informed Defendants of FACTA's truncation requirements.

76.     The cost of truncating debit and credit card account numbers is minimal.

77.     Defendants' business peers and competitors readily brought their credit card and debit card receipt printing processes into compliance with FACTA by programming their card machines and devices to comply with the truncation requirement. Defendants could have readily done the same and knew or should have known to do the same.

78.     For example, Everi Payments, Inc. ("Everi"), one of NRT's direct competitors recently sued NRT alleging that NRT violated Everi's patents surrounding Everi's ATMs, which are FACTA compliant.[10] Indeed, Everi has ATMs in the same market as the Casino at Hollywood Casino, located at 777 Casino Center Drive, Maryland Heights, Missouri 63043 and Casino Queen, located at 200 South Front Street, East St. Louis, Illinois 62201. These two casinos use Everi's ATMs and print out FACTA-compliant receipts.

79.     If it is true that NRT has cloned Everi's processes as alleged in Everi's lawsuit, then it would mean that NRT may have replicated everything other than Everi's FACTA compliance hardware and software protocols.

---

[10] Everi also is known at Global Cash Accces, Inc. The case number for Everi's lawsuit against NRT is *Global Cash Access, Inc. v. NRT Technology Corp., et al.*, No. 2:15-cv-00822-MMD-GWF (D. Nev. May 1, 2015). Subsequently, NRT unsuccessfully tried to invalidate Everi's patent in *NRT Technology Corp., et al. v. Everi Payments, Inc.* (Patent Owner) (Case CBM2015-00167; U.S. Patent No. 6,081,792)

80.     Everi is careful with FACTA compliance as is revealed through its SEC filings, which lists FACTA as a law to which Everi is subject.[11]   However, NRT does not follow this same standard of care despite what it may claim in a separate lawsuit that NRT filed against Everi ("Prior Compliance Lawsuit"), which alleges Everi defamed NRT by stating that NRT was non-compliant.

81.     This Prior Compliance Lawsuit reveals by NRT's own admission that NRT was warned about its FACTA non-compliance by at least one competitor, one financial institution, numerous NRT customers and potential customers as early as November 2014.[12]

82.     More specifically, per NRT:

"NRT's reputation depends significantly on assuring its customers that NRT's products and services comply with all applicable law, and with other industry standards governing cash handling transactions. In particular, NRT's products are required to be compliant with Payment Card Industry ("PCI") data security standards"...."NRT's products are also compliant with Europay, MasterCard and Visa ("EMV") standards., which is a global standard for the inter-operation of integrated circuit cards, point of sale terminals, and automated teller machines".[13]

83.     NRT stressed that such legal compliance for its ATM products is "absolutely critical to its ability to attract new customers, and maintain existing customers", and, therefore, that they maintain a "rigorous and costly protocol to ensure this compliance."[14]

84.     NRT further admitted that it had been warned by "at least one financial institution, Capital One", numerous casinos that are current customers, including Thunder Valley Casino Resort, Red Hawk Casino, Muckelshoot Casino and the Venetian Resort Hotel, that their products were not compliant and were "unreasonably susceptible to data breaches, and obsolete

---

[11] http://www.sec.gov/Archives/edgar/data/1318568/000089161805000733/f04959a3sv1za.htm.
[12] *NRT Technology Corp. v. Global Cash Access, Inc., et al.*, No. 2:14-cv-01927-GMN-CWH, Doc. 1, (D. Nev. November 19, 2014) (lawsuit in which NRT alleges that Everi was telling NRT's customers that NRT was not compliance with applicable data security laws, which NRT denied).
[13] *Id*. at ¶ 12.
[14] *Id*. at  ¶¶ 13, 16.

in need of replacements in order to allow patrons to process transactions at their establishments".[15]

85.     Finally, NRT claimed that it had knowledge of numerous potential casinos, who could have been customers of NRT, but were too concerned about NRT's lack of ATM legal compliance. NRT claimed that this has cost NRT tens of millions of dollars' worth of contracts.[16]

86.     Defendants willfully and recklessly disregarded FACTA's requirements and continued to use ATMs and similar machines that print receipts in violation of FACTA. The amount of account digits are not printed accidentally; the equipment and software used to print the receipts and electronically store an image of the same must be programmed to display certain information, and likewise, programmed not to display certain information.

87.     Therefore, despite the fact that Defendants' competitors already comply with the law and despite the ease with which Defendants could have complied, Defendants either recklessly or intentionally failed to comply with FACTA.

88.     15 U.S.C. §1681n provides:

"§1681n.  Civil liability for willful noncompliance

(a) In general. Any person who willfully fails to comply with any requirement imposed under this title [15 U.S.C. §1681, *et seq*.] with respect to any consumer is liable to that consumer in an amount equal to the greater of –

(1)

(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or

(B) in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose,

---

[15] *Id*. at ¶¶ 16-17.
[16] *Id*. at ¶¶ 19-20.

actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater;

(2) such amount of punitive damages as the court may allow; and

(3) in the case of any successful action to enforce liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court…."

89.    The FCRA, 15 U.S.C. §1681p, provides:

"§1681p.  Jurisdiction of the courts; limitation of actions

An action to enforce any liability created under this title [15 U.S.C. §1681, *et seq*.] may be brought into any appropriate United States district court, without regard to the amount in controversy, or in any other court of competent jurisdiction, not later than the earlier of –

(1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or

(2) 5 years after the date on which the violation that is the basis for such liability occurs."

**WHEREFORE**, Plaintiffs request that the Court enter judgment in favor of Plaintiff and the members of the Class and against Defendants as follows:

A.    For statutory damages of $100 to $1,000 per violation;

B.    In the alternative, only if statutory damages under FACTA are determined to be invalid, illegal, unenforceable or otherwise ineffective for Plaintiff and the Class members under the facts as presented in this Complaint, Plaintiffs request actual damages, which may be determined on a class level by means of expert testimony.

C.    For attorney's fees and costs incurred in this action;

D.    For such other relief as the Court may deem just and proper, including punitive damages.

## Demand for Jury Trial

- 19 -

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all claims in this Complaint so triable.

Respectfully submitted,

**HOLLAND LAW FIRM**

By:   */s/ Eric D. Holland*
      Eric D. Holland
      R. Seth Crompton
      300 N. Tucker, Suite 801
      St. Louis, MO 63101
      Phone:     (314) 241-8111
      Facsimile:  (314) 241-5554
      Email:     eholland@allfela.com
                  scrompton@allfela.com

**and**

**DONNER APPLEWHITE, ATTORNEYS AT LAW**

By:   */s/ Thomas R. Applewhite*
      Thomas R. Applewhite, #6310947
      1108 Olive Street, Suite 200
      St. Louis, Missouri 63101-1949
      Phone:     (314) 240-5351
      Facsimile:  (888) 785-4461
      Email:     tom.applewhite@da-lawfirm.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 22, 2016, I electronically filed this document through the CM/ECF system.

By:   */s/ Eric D. Holland*
      Eric D. Holland
      R. Seth Crompton
      300 N. Tucker, Suite 801
      St. Louis, MO 63101

Phone:       (314) 241-8111
Facsimile:   (314) 241-5554
Email:       eholland@allfela.com
             scrompton@allfela.com