# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| DUSTIN ISENHART, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 3:16-cv-00193 |
| | ) | |
| NRT TECHNOLOGY CORP., *et al.*, | ) | The Honorable Staci Y. Yandle |
| | ) | |
| Defendants. | ) | |
| | ) | |

# DEFENDANTS' COMBINED MOTIONS AND MEMORANDA
## TO DISMISS SECOND AMENDED COMPLAINT
### PURSUANT TO RULE 12(b)(1), (b)(2), (b)(3), AND (b)(6)

DYKEMA GOSSETT PLLC
Patrick T. Stanton, *pro hac vice* pending
pstanton@dykema.com
Rosa M. Tumialán, *pro hac vice*
*rtumialan@dykema.com*
Melanie J. Chico
*mchico@dykema.com*
Jennifer A. Warner, *pro hac vice*
*jwarner@dykema.com*
10 S. Wacker Dr., Ste. 2300
Chicago, IL 60606
Tel.: (312) 876-1700
Fax: (312) 876-1155

Defendants, NRT Technology Corp. ("NRT") and Tropicana Entertainment Inc. ("Tropicana") (collectively "Defendants"), submit the following Motion and Memorandum in Support of: 1) Defendant Tropicana's Motion Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2); 2) Defendants' Motion to Dismiss Pursuant to Rule 12(b)(3); 3) Defendants' Motion to Dismiss Pursuant to Rule 12(b)(1); 4) Defendant Tropicana's Motion to Dismiss Pursuant to Rule 12(b)(6); and 5) Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6).

## INTRODUCTION

Plaintiff, Dustin Isenhart ("Plaintiff"), claims that Defendants have violated the Fair and Accurate Credit Transactions Act ("FACTA") by printing more than the last five digits of his debit card on an electronically printed receipt. Defendants hereby move to dismiss the Second Amended Complaint ("SAC") (Dkt. No. 40) on several grounds.

First, as a threshold matter, the case should be dismissed because this Court does not have personal jurisdiction over Tropicana, nor is the Southern District of Illinois the proper venue for this dispute. Defendants therefore move for dismissal pursuant to Rule 12(b)(2) and 12(b)(3).

Second, Defendants move to dismiss under Rule 12(b)(1) because despite three attempts, Plaintiff has not alleged any actual damages as a result of the alleged failure to truncate his debit card receipt. Instead, he merely pleads non-actionable hypothetical and speculative harm wholly insufficient to establish standing under Article III of the U.S. Constitution.

Finally, the SAC must be dismissed pursuant to Rule 12(b)(6) because there is no plausible basis to establish Tropicana itself processed the ATM transaction or provided Plaintiff with an improperly truncated receipt, or that either Defendant violated FACTA willfully.

## BACKGROUND

### A. The Relevant Allegations Of The Second Amended Complaint.

Plaintiff initiated this action against NRT and Tropicana on February 23, 2016 seeking statutory damages of $100 to $1,000 for each of Defendants' alleged willful violations of FACTA. *See* Dkt. No. 1. He claims that in early 2016, he withdrew cash from an NRT ATM that was located the Lumière Place Casino and Hotel in St. Louis, Missouri (the "Casino"). SAC, ¶ 30, 39. Plaintiff alleges that he received a receipt, which he attached to the SAC as Exhibit A, that truncated only eight of the digits of his debit card and the expiration date. *Id*. at ¶ 39. This, Plaintiff claims, violated FACTA. *Id*. at ¶ 43.

Plaintiff alleges various facts to support the conclusion that Defendants were aware of FACTA's truncation requirement. *Id*. at ¶¶ 8-20. Specifically, Plaintiff alleges that the truncation requirement was publically available, that certain credit card companies required compliance by contract, and that Defendants' peers complied with FACTA. *Id*. at ¶¶ 11, 60. From these general allegations, Plaintiff concludes that Defendants violated FACTA willfully. *Id*. at ¶ 86.

Plaintiff claims that Defendants have exposed him to an "increased risk" of credit and debit card fraud. SAC, ¶ 21. Plaintiff therefore seeks actual damages—in the alternative to statutory damages—to redress his newly-minted allegations of actual harm. *See* SAC at Prayer for Relief.

Plaintiff alleges that the Casino is somehow "approximately in Illinois" and therefore "the torts complained of in [the SAC] occurred in Illinois as well as in the State of Missouri." SAC, ¶¶ 30, 33. Additionally, Plaintiff claims that the Casino "purposely avails [itself] of the business of the residence of several States, including Illinois," and that Tropicana "intentionally

markets the Casino to the general public in the state of Illinois by means of billboards, golf tournament sponsorships, internet advertising and other means of advertising." SAC, ¶ 32. With regard to venue, in addition to his previous allegation in the First Amended Complaint that Plaintiff is a resident of this District, Plaintiff here alleges that, because the Casino is "approximately in Illinois," a substantial part of the wrongful acts complained of in the SAC occurred in this District. SAC, ¶ 29.

Finally, in an attempt to ensnare Tropicana, Plaintiff avers in conclusory fashion that "Defendants" somehow collectively failed to ensure that the ATMs at the Casino complied with the truncation requirement of FACTA. The SAC does not identify any basis for imposing such a duty on Tropicana.

### B. Additional Relevant Facts.

Tropicana owns and operates eight casinos and resorts in Indiana, Louisiana, Mississippi, Nevada, New Jersey, and Aruba. *See* Declaration of Joseph D. Muskett ("Muskett Declaration"), attached hereto as **Exhibit A**, ¶ 2. It is incorporated under the laws of Delaware, and its principal place of business is Las Vegas, Nevada, where its corporate headquarters are located. *Id*. Tropicana does not currently own or operate and has never owned or operated any casinos in Illinois. *Id*. at ¶ 3. Tropicana does not have any offices in Illinois, nor do any of its employees work or have offices in Illinois. *Id*. at ¶ 4.

### ARGUMENT

### I. Tropicana Should Be Dismissed Pursuant To Rule 12(b)(2) Because This Court Does Not Have Jurisdiction Over Tropicana.

#### A. Legal Standard.

Plaintiff bears the burden of proving that personal jurisdiction exists on a Rule 12(b)(2) motion to dismiss. *Central States, Southeast & Southwest Areas Pension Fund v. Reimer*

*Express World Corp.*, 230 F.3d 934, 939 (7th Cir. 2000). In deciding a motion to dismiss pursuant to Rule 12(b)(2), the court may consider affidavits from both parties. *Interlease Aviation Investors II (Aloha) L.L.C. v. Vanguard Airlines, Inc.*, 254 F. Supp. 2d 1028, 1030 (N.D. Ill. 2003) (citing *Greenberg v. Miami Children's Hosp. Research Inst., Inc.*, 208 F. Supp. 2d 918, 922 (N.D. Ill. 2002) (citing *Kontos v. United States Dep't of Labor*, 826 F.2d 576 (7th Cir. 1987)). The court must accept as true any facts contained in the Defendants' affidavits that remain unrefuted by the Plaintiff. *Id.* (citing *Cont'l Cas. Co. v. Marsh*, 2002 U.S. Dist. LEXIS 24534, at *2 (N.D. Ill. Dec. 23, 2002) (citing *RAR, Inc.v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997)).

The Illinois long-arm statute permits the exercise of jurisdiction to the full extent allowed under the Due Process Clause of the Constitution. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). "For a court to exercise personal jurisdiction over an out-of-state defendant, the key issue for constitutional purposes is whether the defendant has sufficient minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012) (internal citations and quotation marks omitted). Personal jurisdiction may be either specific or general. *Id.* at 673. "Specific jurisdiction arises where an out-of-state defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Rozumek v. Johnson Controls, Inc.*, No. 15-cv-441-SMY-SCW, 2015 U.S. Dist. LEXIS 85777, at *25 (S.D. Ill. July 1, 2015) (internal citations and quotation marks omitted). On the other hand, general jurisdiction is established when a defendant has "continuous and systematic" contacts with the state. *Id.* (citing *Tamburo* 601 F.3d at 701). If general jurisdiction exists, a defendant is subject to personal jurisdiction regarding any action,

even those unrelated to its contacts with the state. *Id.* The threshold for general jurisdiction, however, is high because the defendant's contacts "must be sufficiently extensive and pervasive to approximate physical presence." *Id.*

## B. Tropicana Does Not Have Sufficient Contacts With Illinois To Justify Jurisdiction In This Court.

### 1. The Illinois Long Arm Statute Does Not Confer Jurisdiction.

Despite Plaintiff's most recent attempt to demonstrate that this Court may exercise personal jurisdiction over Tropicana, the incontrovertible facts establish that personal jurisdiction simply does not exist. The Casino is located in Missouri and Tropicana has no operations in Illinois. *See generally* Muskett Declaration. Plaintiff attempts to extend the reach of the Illinois long-arm statute by alleging that "the Casino's approximate physical presence is within Illinois" and therefore "the torts complained of in this Complaint occurred in Illinois as well as in the State of Missouri." SAC, ¶ 33. These allegations are novel at best. According to the long-arm statute, 735 ILCS 5/2-209, a person submits to the jurisdiction of the courts of Illinois with respect to any cause of action arising out of the act by, among other things, transacting any business *in Illinois* or committing any tort *within Illinois*. *See* 735 ILCS 5/2-209(a)(1) and (a)(2). Tropicana's Casino is located on St. Louis, Missouri. Muskett Decl. at ¶ 2. The statute does not contemplate acts that have occurred "approximately in Illinois," (*See* SAC, ¶ 27), and therefore, the long-arm statute does allow for personal jurisdiction over Tropicana.

### 2. This Court Cannot Assert Specific Jurisdiction Over Tropicana.

A constitutional analysis of personal jurisdiction fares no better. Specific jurisdiction is not at issue here, because the conduct alleged in the Complaint occurred in St. Louis, Missouri—not Illinois—despite Plaintiff's attempt to geographically reposition the Casino. *See* Muskett Decl. at ¶ 2; *see also* SAC, ¶¶ 30, 33 (alleging that the Casino's "physical presence is

approximately in Illinois" and therefore "the torts complained of in [the SAC] occurred in Illinois as well as in the State of Missouri").  Because the conduct complained of in the SAC does not arise out of or relate to Tropicana's contacts with Illinois, this Court may not exercise specific jurisdiction over Tropicana.  *See Rozumek*, 2015 U.S. Dist. LEXIS at *25 (holding that the court lacked specific jurisdiction because plaintiff's injuries did not "arise out of or relate to" defendant's contacts with Illinois.).

### 3. Because Tropicana Is Not Doing Business in Illinois, The Court Cannot Assert General Jurisdiction Over Tropicana.

Nor should this Court exercise general jurisdiction over Tropicana.  Although Plaintiff alleges in conclusory fashion that Tropicana has "significant, continuous, systematic and pervasive contacts with the State of Illinois," he provides no factual allegations that support this conclusion.  SAC, at ¶¶ 30-33. Putting aside Plaintiff's meaningless allegation that the Casino is "approximately in Illinois," Plaintiff claims only that Tropicana "intentionally market[s] the Casino to the general public in the State of Illinois. . ."  *Id*. at ¶ 32.  But mere marketing presence in Illinois is insufficient to establish that Tropicana is "at home in [Illinois]" or that it "purposely established minimum contacts with [Illinois] such that [it] should reasonably anticipate being haled into court [here]."  *Thomas v. Granite Nursing & Rehab. Ctr., LLC*, No. 13-cv-1320-JPG-DGW, 2014 U.S. Dist. LEXIS 76810, at *7 (S.D. Ill. June 5, 2014) (citing *Tamburo*, 603 F.3d at 701).  Indeed, the Seventh Circuit recently held that "extensive marketing in Illinois," including billboards, and website service contracts with "hundreds of thousands of Illinois residents" does not subject a defendant to a federal court's general jurisdiction. *uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421 (7th Cir. 2010).  Additionally, Tropicana does not own or operate any casinos in Illinois; it does not do business in Illinois; and it therefore does not have "approximate physical presence" in Illinois.  *See* Muskett Declaration.  As a result, maintenance of this suit in

the Southern District of Illinois would "offend traditional notions of fair play and substantial justice." *Felland*, 682 F.3d at 672. The Court should dismiss Plaintiff's claim against Tropicana pursuant to Rule 12(b)(2).

## II. Defendants' Motion To Dismiss The SAC Under Rule 12(b)(3) Should Be Granted Because The Court Lacks Personal Jurisdiction Over Tropicana And None Of The Events Underlying The Claim Took Place In This District.

### A. Legal Standard.

Rule 12(b)(3) provides for dismissal of an action filed in an improper venue. On a Rule 12(b)(3) motion to dismiss, the Court must resolve factual conflicts in favor of Plaintiff, but "[w]hen a defendant challenges venue, the plaintiff bears the burden of establishing that venue is proper." *QBE Int'l Ins. Ltd. v. Shapo*, No. 01 C 0508, 2002 U.S. Dist. LEXIS 3298, at *6 (N.D. Ill. Feb. 26, 2002); *Moore v. AT&T Latin Am. Corp.*, 177 F. Supp. 2d 785, 787 (N.D. Ill. 2001). Venue in a civil action is proper only in "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . .; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b). Because the SAC satisfies none of these provisions, it should be dismissed.

### B. Venue Is Improper In This Court.

#### 1. Tropicana Does Not Reside In This District.

For purposes of the statute, a corporate defendant, such as Tropicana, is a "resident" of any district in which it is subject to the court's personal jurisdiction. *Id.* at (c)(2). As set forth above, this Court lacks personal jurisdiction over Tropicana. Therefore, venue is not proper under 28 U.S.C. § 1391(b)(1).

### 2.	The Events Underlying The Claim Occurred In Missouri.

The only claim asserted in the SAC is that Plaintiff entered into an ATM transaction at the Tropicana's Casino in St. Louis, Missouri and received a non-compliant receipt. No part of this transaction took place in this District. As such, venue is not proper under 28 U.S.C. § 1391(b)(2). Finally, Plaintiff cannot rely upon the third prong of the venue statute—that there is no other district where venue is otherwise proper—because venue would be proper in the Eastern District of Missouri where Tropicana operates the Casino, where NRT's ATM's are located, and where the underlying transaction occurred. Venue is thus improper in this District, and this action should be dismissed, or alternatively, transferred pursuant to Rule 12(b)(3).

### III.	If This Court Determines That Personal Jurisdiction And Venue Are Proper, It Should Nonetheless Dismiss The SAC Because Plaintiff Lacks Standing.

Under the U.S. Constitution, federal courts are only authorized to hear "cases" and "controversies." U.S. Const. Art. III, § 2. "Standing is an essential component of Article III's case-or-controversy requirement." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "In essence the question of standing is whether [a plaintiff] is entitled to have the court decide the merits of the dispute or particular issues." *Id*. A Plaintiff invoking federal jurisdiction has the burden of establishing standing, and, at the pleading stage, he must "clearly allege facts demonstrating each element." *Gubala v. Time Warner Cable, Inc.*, No. 15-cv-1078-pp, 2016 U.S. Dist. LEXIS 79820, at *9 (E.D. Wis. June 17, 2016) (internal quotation marks and citations omitted); *see also Johnson*, 2009 U.S. Dist. LEXIS 90595, at *3 (holding that it is a plaintiff's burden to establish standing is proper in federal court) (citing *Apex Digital, Inc.*, 572 F.3d at 443)).

The Supreme Court of the United States has held that "irreducible constitutional minimum" to support Article III standing contains three elements. *Spokeo, Inc. v. Robins*, 136 S.Ct. 1550, 1549 (2016) (citing *Lujan*, 504 U.S. at 560-61). First, the plaintiff must have suffered an "injury in fact" which is both: (a) "concrete and particularized" and (b) "actual or imminent, not conjectural or hypothetical." *Id*. Second, a plaintiff must establish a causal connection between the injury and the defendant's acts. *Id*. Third, the injury must be likely to be redressed by a favorable decision. *Id*. A plaintiff cannot satisfy Article III by simply alleging a statutory violation that does not result in harm. *Id*. at 1549. The fact that a legal standard has been violated says nothing about whether any harm has been suffered, let alone whether the harm is "concrete" or "particularized." A failure to meet any one of the three criteria for standing constitutes a lack of Article III standing and requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *See Johnson v. Allstate Ins. Co.*, 2009 U.S. Dist. LEXIS 90595, at *3 (S.D. Ill. Sept. 30, 2009) (citing *Retired Chi. Police Ass'n v. City of Chi.*, 76 F.3d 856, 862 (7th Cir. 1996)).

In *Spokeo* the Supreme Court of the United States clarified what is required for a plaintiff to plead facts sufficient to confer standing under Article III. *See Spokeo*, 136 S.Ct. 1540. In that case, the plaintiff alleged that defendant had publically disclosed false, but positive, information about him in violation of the FCRA. *Id*. at 1546. The Ninth Circuit concluded that the plaintiff's "personal interests in the handling of his credit information, coupled with the purported violation of statutory rights created by the Act," were sufficient to satisfy the injury in fact requirement of Article III standing. *Id*. at 1544. The Supreme Court granted review to address the issue of whether Congress may confer Article III standing upon a plaintiff who suffers no concrete harm by authorizing a private right of action for a bare procedural violation of a federal statute.

The Supreme Court held that the Ninth Circuit erred in its standing analysis by focusing only on whether the plaintiff's purported injury was "particularized," without also assessing whether it was sufficiently "concrete." *Id*. at 1545. The Court noted that while certain types of intangible harms can be concrete for purposes of Article III standing, a bare procedural violation without resulting *de facto* harm is insufficient. *Id*. at 1549-50. The Court gave two examples of such a bare procedural violation, including a defendant's failure to comply with a statutory notice requirement, and in the context of the FCRA, the disclosure of inaccurate information about a plaintiff such as a zip code, that "does not cause harm or present any material risk of harm." *Id*. at 1550.

A concrete injury must be "'de facto'; that is, it must actually exist. When the Court has used the adjective 'concrete,' [it has meant] to convey the usual meaning of the term—'real,' and not 'abstract.'" *Id.* at 1548. "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 1543. The *Spokeo* Court emphasized that it is not enough for a plaintiff to "allege a bare procedural violation, divorced from any concrete harm" to satisfy the injury-in-fact requirement of Article III. *Id*. at 1550.

### 1. Plaintiff Has Not Alleged Any *De Facto* Harm Resulting From The Alleged Failure To Truncate His ATM Receipt.

Plaintiff alleges that Defendants failed to comply fully with the truncation rule in FACTA, which provides that "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction." 15 U.S.C. § 1681c(g). Plaintiff alleges that he used his debit card at an ATM kiosk at the Casino and received his cash and a receipt that printed eight rather than five digits of his debit card. Plaintiff does not allege to have suffered any *de facto* or actual injury as a result of more than five digits

appearing on the ATM receipt, a copy of which is attached to the SAC as an Exhibit, and therefore presumably is still in his possession.  SAC, Ex. A.

For example, Plaintiff does not allege that he suffered unauthorized withdrawals from his account.  He does not allege that his identity was stolen or that a thief used his debit card number to make unauthorized purchases.  He does not even allege that the non-truncated information of the ATM receipt that he received was disclosed to, intercepted by, or seen by any third party. Moreover, unlike a typical retail merchant transaction, NRT did not generate or kept a duplicate copy of the receipt, nor does Plaintiff allege otherwise.  All that is alleged is that Plaintiff received an ATM receipt that contained more than five digits of his debit card number.  In short, except for a purely procedural violation of the truncation requirement, Plaintiff has not alleged any present, actual, or resulting concrete injury whatsoever.

Where, as here, a plaintiff fails to allege more than a statutory violation without actual harm, courts have found a lack of standing under Article III.  For example, in *Gubala v. Time Warner Cable, Inc.*, the plaintiff alleged that defendant violated the Cable Communications Policy Act ("CCPA") by failing to destroy his personally identifiable information.  *Id*. at *2.  The defendant in that case argued that plaintiff did not have standing under *Spokeo* because he did not allege a concrete injury in fact.  *Id*. at *7-8.  The *Gubala* court agreed, noting that there, as here, the plaintiff:

> [did] not allege that the defendant has disclosed his information to a third party. Even if he had alleged such a disclosure, he [did] not allege that the disclosure caused him any harm. He [did] not allege that he has been contacted by marketers who obtained his information from the defendant, or that he has been the victim of fraud or identity theft. He allege[d] only that the CCPA requires cable providers to destroy personal information at a certain point, and that the defendant hasn't destroyed his. *Id*. at *13.

Tellingly, the court observed that the plaintiff's allegations in *Spokeo* were closer to alleging a concrete injury than those alleged by the plaintiff in *Gubala* because, in *Spokeo*, "the defendant wasn't just keeping his information; it was publishing, to anyone who viewed the website, inaccurate information." *See Id*. at *14. Following the Supreme Court's "clear directive in *Spokeo*," the *Gubala* court found that the plaintiff failed to allege any concrete actual harm and therefore did not have standing. *Id*. at *17.

The same is true here. Plaintiff has not alleged any *de facto*, real, or concrete injury resulting from more than five digits appearing on his ATM receipt. Without more, the allegations are of nothing more than a "bare procedural violation," insufficient for standing under Article III. *See Spokeo*, 136 S.Ct. at 1550.

### 2. Plaintiff's Allegations Of *Potential Future* Harm Are Insufficient For Article III Standing.

In an effort to allege some harm sufficient for Article III standing, the SAC alleges in a conclusory manner and without support that Plaintiff has been exposed to a hypothetical increased risk of identity theft and fraud. In particular, the SAC alleges that Defendants "have actually harmed Plaintiff and the class members because Defendants have increased the risk that Plaintiff and the Class members can become victims of credit and debit card fraud." SAC, ¶ 21.

While the *Spokeo* Court acknowledged, citing *Clapper*, that "the risk of real harm" could, under certain circumstances, satisfy the requirements of Article III, any such harm must be imminent and certainly impending, not speculative and hypothetical. *Clapper v. Amnesty Int'l USA*, 133 S.Ct. 1138, 1147 (2013). In *Clapper*, the respondents claimed that surveillance done pursuant to the Foreign Intelligence Surveillance Act of 1978 compromised their ability to communicate with their clients. *Id*. at 1145-46. When their standing was challenged, respondents claimed "that there is an objectively reasonable likelihood that their communications

will be acquired under [the Act] at some point in the future, thus causing them injury," and that "the risk of surveillance under [the Act] is so substantial that they have been forced to take costly and burdensome measures . . ." *Id.* at 1146. The Court held that the alleged harm was entirely speculative and did not support standing since the future injury was not certainly impending:

> [R]espondents' argument rests on their highly speculative fear that: (1) the Government will decide to target the communications of non-U.S. persons with whom they communicate; (2) in doing so, the Government will choose to invoke its authority under [the Act] rather than utilizing another method of surveillance; (3) the Article III judges who serve on the Foreign Intelligence Surveillance Court will conclude that the Government's proposed surveillance procedures satisfy [the Act's] many safeguards and are consistent with the Fourth Amendment; (4) the Government will succeed in intercepting the communications of respondents' contacts; and (5) respondents will be parties to the particular communications that the Government intercepts.

*Id.* at 1148. This "highly attenuated chain of possibilities," the Court held, "does not satisfy the requirement that threatened injury must be certainly impending." *Id.*

So too here. As set forth above, Plaintiff does not assert any "credible threat of harm" that "is both real and immediate," nor does he allege that future injury is "certainly impending" as a result of him receiving (and remaining in possession of) an ATM receipt with more than five digits of his card number printed. Plaintiff avers only that he has been exposed to an increased risk that he will experience credit or debit card fraud (SAC, ¶ 21), and that he and the putative class are "***potential*** victims" and that they ***may*** have to pay for credit monitoring, and ***should*** take remedial measures. *Id.* at ¶ 25 (emphasis added). As in *Clapper*, this highly attenuated and speculative chain of possibilities does not satisfy the requirement that a threatened injury be "certainly impending." *Clapper*, 133 S.Ct. at 1147-48.

That Plaintiff's allegations are insufficient is further clear from the decisions in other courts that have addressed the adequacy of injury-in-fact allegations in the context of FACTA

and have held that an increased risk of identity theft or fraud is insufficient to satisfy the requirements of Article III. *See, e.g., Gaston v. Malone*, No. 13-00103, 2013 U.S. Dist. LEXIS 58020, at *10-11 (D. Ariz. Apr. 23, 2013) (dismissing FACTA claim for lack of standing because plaintiff had not alleged any misuse of credit card information); *Walsh v. Famous Dave's of America, Inc.*, No. 4:08-cv-183, 2008 U.S. Dist. LEXIS 69134, at *4 (N.D. Fla. Sept. 11, 2008) (dismissing FACTA claim for lack of standing because plaintiff's alleged increased risk of harm was insufficient to show actual harm); *Aliano v. Texas Roadhouse Holdings, LLC*, No. 07-4108, 2008 U.S. Dist. LEXIS 104428, at *8-9 (N.D. Ill. Dec. 23, 2008) (dismissing complaint after noting that numerous district courts have also determined that private information security law claims under FACTA and other similar statutes are not viable absent some actual loss of information or identity).

More recently, in *Strautins v. Trustwave Holdings, Inc.*, 27 F. Supp. 3d 871, 874 (N.D. Ill. 2014) plaintiff asserted, among other things, violations of the FCRA (of which FACTA is a part) for a data breach at the South Carolina Department of Revenue (SCDOR). Plaintiff did not allege that any of her personal data had been stolen, but instead alleged that she incurred expenses and spent time to mitigate the increased risk of identity theft. *Id*. at 875. The Court held that the plaintiff did not have standing to sue because her claims were "too speculative to confer Article III standing" because the claims "depend[ed] on a number of variables, such as whether their data was actually taken during the breach, whether it was subsequently sold or otherwise transferred, whether anyone who obtained the data attempted to use it, and whether or not they succeeded." *Id*. at 876. Citing *Clapper*, the court held that because plaintiff's fears were "contingent on a chain of attenuated hypothetical events and actions by third parties independent of the defendant," plaintiff did not establish standing. *Id*. The *Strautins* court

emphasized that "the import of the Supreme Court's decision in *Clapper* is that, whatever verbal formulation is used to describe it, the threshold of probability for injuries that have not actually occurred is high." *Id*. at 878. Any marginal increase in the risk of potential future harm is not enough to satisfy Article III's standing requirements. *Id*.

Similarly, in *In re Barnes & Noble Pin Pad*, No. 12-cv-8617, 2013 U.S. Dist. LEXIS 125730, at *11-2 (N.D. Ill. Sept 3, 2013), plaintiffs claimed that they suffered, among other things, a loss of time and expenses to remediate an increased risk of identity theft caused by a data breach at Barnes & Noble stores. *Id*. at *4. In that case, the court found that the plaintiffs' alleged injuries were insufficient to confer standing because they failed to assert that their personal information was stolen, and thus the risk of harm was not imminent or certainly impending. *Id*. at *12. Plaintiff is even further removed from alleging an impending risk of actual harm than the plaintiffs in either *Strautins* or *Barnes & Noble*: Plaintiff does not claim that any of his information has been stolen or can be stolen, as Plaintiff retained his credit card receipt and attached it to the SAC as an Exhibit.

Nor are Plaintiff's allegations of needing to take remedial measures sufficient. Unlike the plaintiffs in *Strautins* and *Barnes & Noble*, Plaintiff has not alleged he actually took any remedial measures; he has alleged merely he "may" or "should" do so. SAC, ¶ 25. Nevertheless, those decisions demonstrate that even if he had undertaken such prophylactic measures are insufficient to confer standing anyway. *See Barnes & Noble*, 2013 U.S. Dist. LEXIS 125730 at *11-12 (finding plaintiffs' alleged prophylactic injuries insufficient to establish standing because they had not asserted that their personal information was stolen during the breach and thus the risk of harm was not imminent.); *Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688, 694 (7th Cir. 2015). As courts have made clear: "Plaintiffs cannot

manufacture standing by incurring costs in anticipation of non-imminent harm." *Id*. (citing Clapper, 133 S.Ct at 1155) (internal quotation marks omitted)).

The Seventh Circuit has unambiguously explained when mitigation expenses are sufficient to confer standing; and the SAC fails to meet this standard. In *Remijas*, the plaintiffs alleged that, as a result of a data breach, they spent time and money protecting themselves against potential future harm. 794 F.3d at 694. The Court found these allegations sufficient to confer standing because the risk of harm was imminent—plaintiffs' personal information had *actually* been stolen. *Id*. at 693. Following *Remijas*, the Court in *Lewert v. P.F. Chang's China Bistro, Inc*., 2016 U.S. App. 6766, at *7 (7th Cir. Apr. 14, 2016), held that plaintiff's mitigation expenses conferred standing because his information was *actually* stolen and the risk of harm was therefore imminent. *Lewart*, 2016 U.S. App. 6766, at *6-7. *Remijas* and *Lewart* are the inverse of *Strautins* and *Barnes & Noble*. Like Plaintiff here, neither plaintiff in *Strautins* and *Barnes & Noble* alleged that their information was stolen. Accordingly, the risk of harm they alleged was not sufficiently imminent and the mitigation expenses they incurred could not confer standing.

### 3. Cases Decided Post-*Spokeo* Demonstrate That Plaintiff Does Not Have Standing.

In addition to *Gubala*, several other decisions post-*Spokeo* support dismissal here. In *Smith v. Ohio State Univ.*, for example, the court held plaintiffs did not have standing to sue under the FCRA because they did not experience any actual harm. No. 15-CV-3030, 2016 U.S. Dist. LEXIS 74612, at *11 (S.D. Ohio June 8, 2016). In that case, plaintiffs alleged that they signed credit releases as a precondition to employment and that those releases contained provisions that were illegal under the FCRA. *Id*. at *2. However, plaintiffs "admitted that they

did not suffer a concrete consequential damage" as a result of the alleged violation. *Id*. at *11. As such, plaintiffs in *Smith* did not have standing. *Id*.

Even cases that have found a plaintiff sufficiently alleged standing post-*Spokeo* have done so under circumstances vastly different than those here, and similarly support dismissal. In *Rogers v. Capital One Bank (USA), N.A.*, 2016 U.S. Dist. LEXIS 73605, at *4 (N.D. Ga June 7, 2016), the court found that plaintiffs alleged sufficient facts to grant them standing to sue under the Telephone Consumer Protection Act ("TCPA"). The court held that plaintiffs asserted an actual injury because "their cell phone lines were unavailable for legitimate use during the unwanted calls." *Id*. at *5. Similarly, in *Mey v. Got Warranty, Inc*., No. 15-CV-101, 2016 U.S. Dist. LEXIS 84972, at *8 (N.D.W. Va. June 30, 2016), the court identified a variety of concrete injuries that could be caused by violations of the TCPA including tangible (depletion of minutes and monetary charges) and intangible (invasion of privacy and lost time). This case is distinguishable from both *Rogers* and *Mey*. Plaintiff here has not alleged any tangible actual harm. Nor has Plaintiff alleged that he experienced any invasion of privacy or other intangible injury. *Spokeo* and its progeny demonstrate that Plaintiff does not have standing.

## IV.    The SAC Should Be Dismissed Pursuant To Rule 12(b)(6).

### A.  Tropicana Should Be Dismissed Because It Did Not Accept A Credit Card Or Issue A Receipt To Plaintiff.

To state a claim for relief under FACTA, Plaintiff must allege that a defendant is a "person that accepts credit or debit cards for the transaction of business" and that a defendant printed "more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." 15 U.S.C. § 1681c(g)(1).

The SAC fails to state a plausible claim that Tropicana violated FACTA. Although Plaintiff alleges generally that Tropicana is a "person that accepts . . . debit cards for the

transaction of business" pursuant to FACTA, the facts alleged about Plaintiff's ATM transaction do not support the conclusion. SAC, ¶ 38. The SAC identifies an ATM transaction at the Casino during which "Plaintiff paid $5.00 to NRT each time he used the ATMs in order to receive paper currency from NRT's machines." SAC, ¶ 40. Although Plaintiff claims that Tropicana "assists NRT with processing" the transactions because Tropicana "allow[s] NRT's non-compliant ATMs in the Casino," there is no plausible basis to establish Tropicana itself processed the ATM transaction or provided Plaintiff with an improperly truncated receipt. Indeed, Plaintiff explicitly acknowledges that the transaction occurred at "NRT's machines." *Id*. Nor can Plaintiff allege facts that overcome this fundamental defect since Plaintiff has expressly alleged that the ***receipt was provided*** by NRT. The statute does not impose liability on an entity that merely provided goods or services in exchange for cash obtained from an ATM that allegedly violated FACTA. *See Stelmachers v. Verifone Sys.*, No. 5:14-cv-04192-EJD, 2015 U.S. Dist. LEXIS 163857 (N.D. Cal Dec. 7, 2015) (holding that a plaintiff's conclusory allegation that defendant is a "person" under FACTA is insufficient without factual support establishing that defendant "served as a merchant during the transaction at issue.").

**B**. **The SAC Does Not Adequately State A Claim For Damages.**

Plaintiff seeks both statutory damages in addition to actual damages in the SAC. In order to obtain statutory damages, a plaintiff must demonstrate that the alleged violation was willful. 15 U.S.C. § 1681n(a). The Supreme Court, in *Safeco Insurance Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007), set the standard for willful violations of the FCRA, holding that to prove willfulness a plaintiff must plead and prove either knowing or reckless conduct. To survive a motion to dismiss, the SAC must allege sufficient facts to support a plausible inference that Defendants willfully violated FACTA's truncation requirement. Here, the SAC fails to state a claim for recovery of statutory damages because it consists of nothing more than conclusory allegations of

willfulness based on speculative statements that the Defendants knew of FACTA's requirements and somehow knowingly ignored them.  *See, e.g.,* SAC, ¶ 60.

Although the SAC includes general allegations that FACTA's requirements were communicated generally to companies like Defendants, and therefore, these Defendants should have been aware of them, such conclusory allegations do not state a claim for willful violation of FACTA.  While some courts have found these types of allegations sufficient, the better-reasoned decisions have found that "the fact that information about FACTA was available to [defendant] does nothing to support [plaintiff]'s naked assertion that [defendant] was notified of FACTA's provisions *and knowingly ignored them*."  *Seo v. CC CJV Am. Holdings, Inc.,* No. CV 11-05031, 2011 U.S. Dist. LEXIS 120246, at *5 (C.D. Cal. Oct. 18, 2011) (emphasis added).[1]  In fact, the SAC ignores the fact that Defendants partially complied with FACTA's truncation requirement by redacting Plaintiff's debit card expiration date and the middle five digits of the card number.  *See* SAC, Exhibit A.  In *Crupar-Weinmann v. Paris Baguette Am., Inc.,* No. 13 Civ. 7013, 2014 U.S. Dist. LEXIS 91119, *1 (S.D.N.Y. June 29, 2014) *vacated on other grounds*, 2016 U.S. App. LEXIS 12012 (2nd Cir. June 30, 2016), the court dismissed an action brought under FACTA, finding that the plaintiff's claims were merely conclusory and therefore could not support a finding of willfulness.  *Id*. at *11.  After noting that the defendant had redacted credit card receipts to remove certain digits, the court found that "the fact that defendant changed its credit

---

[1] *See Fullwood v. Wofgang's Steakhouse, Inc.*, No. 13 Civ. 7174, 2014 U.S. Dist. LEXIS 160729, at *16 (S.D.N.Y. Nov. 14, 2014). ("Some courts applying *Safeco* to violations of FACTA through inclusion of excess data on receipts have held that a complaint adequately alleges willfulness because it avers that a defendant was on notice of FACTA's truncation requirement, and thus it is plausible to infer either a knowing or reckless violation from the facts pleaded. Other courts have held that in cases where the Defendant is aware of a statute's requirements, the Plaintiff must also allege that there was something more than a negligent violation, i.e. a voluntary, deliberate or intentional violation.") (internal citations omitted). Defendants, like the Court in *Fullwood*, assert that the later camp has reached the more logical conclusion. *See Id.*

card receipt to partially comply with FACTA's requirements renders implausible the claim that defendant was attempting to willfully evade FACTA's restrictions." *Id.* at *13; *see also Katz v. Donna Karan Int'l. Inc.*, No. 14 Civ. 740, 2015 U.S. Dist LEXIS 11536, *5 (S.D.N.Y. Jan. 29, 2015) *vacated on other grounds*, 2016 U.S. App. LEXIS 12012 (2nd Cir. June 30, 2016) (dismissing a FACTA action for failure to allege willfulness because plaintiff's complaint failed to reconcile defendants' "partial compliance-redacting credit card expiration dates and all digits unique to the cardholder-with its alleged willful noncompliance"); *Vidoni v. Acadia Corp.*, No. 11-cv-00448, 2012 WL 1565128, at *4 (D. Me. Apr. 27, 2012) (The allegation that the Defendant actually was complying with FACTA at other locations undermines the plaintiff's claim that the Defendant willfully violated FACTA at [a different location]."). Here, it is clear from the allegations of the SAC and Plaintiff's receipt, which was attached as an exhibit, that Plaintiff has alleged partial compliance with FACTA's truncation requirements. As such, it is implausible that Defendants were "attempting to willfully evade FACTA's restrictions."

Finally, Plaintiff's alternative claim for actual damages should be dismissed pursuant to Rule 12(b)(6) because, as established above, he has not suffered any actual injury.

<u>CONCLUSION</u>

Defendants therefore respectfully request that this Court grant their Motion and enter an order dismissing this action in its entirety and granting such other and further relief as the Court deems just and reasonable.

| | |
|---|---|
| Patrick T. Stanton, *pro hac vice* pending | Respectfully submitted, |
| Rosa M. Tumialan, *pro hac vice* | |
| Melanie J. Chico | NRT TECHNOLOGY CORPORATION and |
| Jennifer A. Warner, *pro hac vice* | TROPICANA ENTERTAINMENT, INC. |
| 10 S. Wacker Dr., Ste. 2300 | |
| Chicago, IL 60606 | By: s/ Jennifer A. Warner |
| (312) 876-1700 | One of Their Attorneys |

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on July 13, 2016, I electronically filed the foregoing **Defendants' Combined Motions And Memoranda To Dismiss Second Amended Complaint Pursuant To Rule 12(b)(1), (b)(2), (b)(3), And (b)(6)** using the CM/ECF system which will send notification of such filing to all registered participants.

s/ Jennifer A. Warner
Jennifer A. Warner (jwarner@dykema.com)
Dykema Gossett PLLC
10 South Wacker Drive, Suite 2300
Chicago, IL 60606
(312) 876-1700