# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **DUSTIN ISENHART**, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 16-cv-193 SMY/PMF |
| v. | ) | |
| | ) | |
| **NRT TECHNOLOGY CORP.**, *et al.* | ) | The Honorable Staci M. Yandle |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MEMORANDUM AND MOTION TO DISMISS PURSUANT TO RULES 12(b)(1), (b)(2), (b)(3), and (b)(6)

**COMES NOW** Plaintiff, by and through his attorneys, and for his Response in Opposition to NRT Technology Corp.'s[1] and Tropicana Entertainment, Inc.'s[2] Memorandum and Motion to Dismiss Pursuant to Rules 12(b)(1),[3] 12(b)(2),[4] (b)(3),[5] and (b)(6),[6,7] states as follows:

## INTRODUCTION

Defendants' motion to dismiss Plaintiff's Second Amended Complaint,[8] filed on five separate bases, fails because the Complaint clearly and unmistakably negates each of the arguments made by Defendants. As set forth below, Defendants do not accurately represent the contents of the Complaint in their motion.

---

[1] In this Response, Defendant NRT Technology Corp. shall be referred to as "NRT".

[2] In this Response, Defendant Tropicana Entertainment, Inc. shall be referred to as "Tropicana".

[3] Defendants' 12(b)(1) Motion shall be referred to as their "Motion to Dismiss for Lack of Subject-Matter Jurisdiction".

[4] Tropicana's 12(b)(2) Motion shall be referred to as its "Motion to Dismiss for Lack of Personal Jurisdiction".

[5] Defendants' 12(b)(3) Motion shall be referred to as their "Motion to Dismiss for Improper Venue".

[6] Tropicana's 12(b)(6) Motion shall be referred to as "Tropicana's Motion to Dismiss for Failure to State a Claim".

[7] Separately, Defendants' 12(b)(6) shall be referred to as "Defendants' Motion to Dismiss for Failure to State a Claim".

[8] The Second Amended Complaint to which this Court should refer was filed on June 22, 2016, and it will simply be referred to herein as the "Complaint" because it is the only complaint that is relevant to this analysis.

Tropicana's Motion to Dismiss for Lack of Personal Jurisdiction should fail because it operates a casino less than a third of a mile from the border of Illinois, regularly solicits and advertises in Illinois in a purposeful attempt to reach the residents of the state, regularly serves Illinois residents at its border casino, and because the other "facts" presented in Tropicana's affidavit are untenable.

Defendants' Motion to Dismiss for Improper Venue should fail because Defendants are each a resident of Illinois given that personal jurisdiction is proper for both defendants, because a substantial part of the events and omissions occurred in this District and because NRT, the main defendant that is the common thread linking the Class members, consented to venue in this District.

As forecasted in Plaintiff's Response in Opposition to Defendants' Motion to Stay, the Supreme Court's opinion in *Spokeo, Inc. v. Robin's* did not make law that impacted this case. Defendants' motion to dismiss for lack of subject-matter jurisdiction should be denied because Plaintiff and the Class have suffered a concrete injury in the form of Defendants violating their right to have FACTA-compliant receipts issued to them, making them more susceptible to identity theft. They have also suffered actual damages, which have been properly alleged and may be further proven through expert testimony.

Tropicana's Motion to Dismiss for Failure to State a Claim should fail because the Complaint makes it clear that Tropicana is actively involved in the profits from selling NRT's paper money to its patrons.

Defendants' Motion to Dismiss for Failure to State a Claim should fail because Plaintiff's Complaint clearly demonstrates that Defendants' violation of FACTA was willful especially given that NRT previously filed a defamation lawsuit against a competitor for warning it that it was

violating FACTA, given the numerous warnings from the government and third-party entities, and given that the receipts regularly sat out for Tropicana employees to inspect.

## ARGUMENT

**A.** **TROPICANA'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION SHOULD BE DENIED BECAUSE IT OPERATES A CASINO LESS THAN A THIRD OF A MILE FROM THE BORDER OF ILLINOIS, REGULARLY SOLICITS AND ADVERTISES IN ILLINOIS IN A PURPOSEFUL ATTEMPT TO REACH THE RESIDENTS OF THE STATE, REGULARLY SERVES ILLINOIS RESIDENTS, AND BECAUSE THE OTHER "FACTS" PROVIDED IN TROPICANA'S AFFIDAVIT ARE UNTENABLE.**

When personal jurisdiction is challenged under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction over a defendant. *Hamilton Mem'l Hosp. Dist. v. Toelle*, No. 12-CV-1004-JPG-PMF, 2013 WL 1130888, at *1 (S.D. Ill. Mar. 18, 2013) <u>citing</u> *Purdue Research Found. v. Sanofi–Syntholabo, S.A.,* 338 F.3d 773, 782 (7th Cir. 2003). If there are material facts in dispute regarding the Court's jurisdiction over a defendant, the Court must hold an evidentiary hearing at which the plaintiff must establish jurisdiction by a preponderance of the evidence. *Id.* (citing *Hyatt Int'l Corp. v. Coco,* 302 F.3d 707, 713 (7th Cir.2002)), in which case Plaintiff would need to conduct discovery on personal jurisdiction. Alternatively, the Court may decide the motion to dismiss without a hearing based on the submitted written materials so long as it resolves all factual disputes in the plaintiff's favor. *Id*. <u>citing</u> *Purdue Research,* 338 F.3d at 782 (citing *RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1276 (7th Cir.1997)). If the Court consults only the written materials, the plaintiff need only make a *prima facie* showing of personal jurisdiction. *Id*. <u>citing</u> *Purdue Research,* 338 F.3d at 782 (citing *Hyatt,* 302 F.3d at 713).

First, before responding to Tropicana's arguments, this Court should note that *NRT* **consented to this Court's jurisdiction by being registered as a foreign corporation in Illinois and maintaining a registered agent for service of process in Illinois**. See <u>Exhibit A – Proof of NRT's Illinois Registration</u>. "[A] corporation has consented to be sued in the forum where it

designates an agent to receive service of process." *R.R. Donnelley & Sons Co. v. Jet Messenger Servs., Inc.*, No. 03 C 7823, 2004 WL 1375402, at *4 (N.D. Ill. May 25, 2004). Further, in the *Daimler* case, the United States Supreme Court made clear that consent continues to be a "traditional basis of jurisdiction" upon which personal jurisdiction may be exercised. *Daimler A.G. v. Bauman*, 134 S.Ct. 746 (2014). Clearly, this Court has jurisdiction over NRT evidenced both by its consent and its failure to raise the personal jurisdiction issue which Tropicana attempts to inject in to the case as so many defendants have tried to do post-*Daimler.*

Tropicana, however, argues that, in light of the affidavit of Corporate Counsel Joseph D. Muskett submitted by Tropicana, Plaintiff does not sufficiently make a prima facie showing of personal jurisdiction. Tropicana is wrong. Plaintiff has made the following allegations in his Complaint that are relevant here:

- "This Court may properly exercise personal jurisdiction over Defendants because the Lumière Casino and Hotel (the "Casino") is situated on the border of Illinois and Missouri, serves many Illinois residents, and purposely avail themselves of the business of the residents of several States, including Illinois. The Casino is less than one-third of a mile from the Illinois border, so its physical presence is approximately in Illinois as well as Missouri." Compl., ¶ 30.

- "Like NRT, Tropicana also transacts business in the State of Illinois. Tropicana and Tropicana St. Louis LLC intentionally market the Casino to the general public in the State of Illinois by means of billboards, golf tournament sponsorships, internet advertising and other means of advertising." Compl., ¶ 32.

- "Furthermore, this Court has personal jurisdiction over Defendants because Defendants conduct substantial business within the State of Illinois such that they have significant, continuous, systematic and pervasive contacts with the State of Ill. Furthermore, because the Casino's approximate physical presence is within Illinois, the torts complained of in this Complaint occurred in Illinois as well as in the State of Missouri." Compl., ¶ 33.

Obviously, the content in the Complaint makes the prima facie case for personal jurisdiction over Tropicana in the crystal clear terms that Tropicana suggests is necessary in its brief. It spells out in incredible detail: (a) how Tropicana has sufficient continuous and systematic contacts with Illinois so as to approximate physical presence in Illinois and (b) how Tropicana

does business in Illinois because it intentionally markets the relevant casino to Illinois residents through various advertising means and mediums. *See* above citations to Complaint.

In an attempt to combat this clear prima facie showing, Tropicana merely reattached the same affidavit from Mr. Muskett despite the fact that his affidavit contains important misstatements. He claims that "Tropicana has never had any business operations in Illinois[.]" Muskett Dec., ¶ 3. He also claims that Tropicana St. Louis, which is Tropicana's subsidiary, "has never had any business operations in Illinois[.]" Muskett Dec., ¶ 5. Plaintiff attaches Exhibit B – Pictures of Tropicana Billboards in Illinois, which are physically located in the state of Illinois where thousands of Illinois residents drive past it every day, and also directs this Court to http://fox2now.com/2013/05/31/marshall-faulk-golf-tournament/, demonstrating that Tropicana hosts golf tournaments in Collinsville, Illinois as well as other Illinois courses. Mr. Muskett also claims that none of its employees work in Illinois (Muskett Dec., ¶ 5), but, being a border casino, many – if not most – of its employees certainly live in Illinois. To the extent that this Court believes this to be an important element of the analysis (which is admittedly one which Plaintiffs and the Class have not had an opportunity to conduct discovery on), Plaintiffs would request time to conduct necessary discovery on this issue.

Tropicana admits that personal jurisdiction exists if it falls within the reach of Illinois' long-arm statute: "According to 735 ILCS 5/2-209, a person submits to the jurisdiction of the courts of Illinois with respect to any cause of action arising out of the act by, among other things, transacting any business in Illinois or committing any tort within Illinois. *See* 735 ILCS 5/2-209(a)(1) and (a)(2)." MTD, p. 5, ¶ 2. As is shown above, Tropicana is clearly conducting business in Illinois. Furthermore, by unleashing its illegal receipts on Illinois customers, many of which take the illegal receipt with them into Illinois, it was committing torts within Illinois. *Felland v.*

*Clifton*, 682 F.3d 665, 679 (7th Cir. 2012) (This series of alleged misrepresentations amounts to a "local act" causing "injury to person or property within ... this state"). "[S]trict territorial jurisdiction" has been "abandoned". *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 426 (7th Cir. 2010). "Jurisdiction cannot be avoided simply because a defendant did not physically enter the forum state, … we have also said that "[p]otential defendants should have some control over—and certainly should not be surprised by—the jurisdictional consequences of their actions[.]"" *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012) citing *Burger King*, 471 U.S. at 476, 105 S.Ct. 2174 and *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1278 (7th Cir.1997). By serving all of these Illinois customers, even if it disputes that it committed "torts" in Illinois, Tropicana was definitely transacting business in Illinois. Tropicana cannot be surprised that it is now being called to answer for its illegal action in an Illinois court.

Moreover, Tropicana's cited case law refutes its position. The decision in *Thomas v. Granite Nursing & Rehab. Ctr., LLC* notes that the defendants seeking dismissal "do not conduct business, work, have an office, have any agents or employees, own or lease property, or advertise in Illinois." *Thomas v. Granite Nursing & Rehab. Ctr., LLC*, No. 13-CV-1320-JPG-DGW, 2014 WL 2535254, at *1 (S.D. Ill. June 5, 2014). As demonstrated, *supra*, Tropicana operates a casino less than a third of a mile from the border of Illinois, has billboards physically planted in Illinois soil, regularly advertises and solicits business in Illinois, and regularly serves Illinois residents in a purposeful attempt to reach the residents of the state. Second, in *uBID, Inc. v. GoDaddy Group, Inc.*, the Court actually found that GoDaddy was subject to personal jurisdiction of the forum state. *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 433 (7th Cir. 2010). ("Now GoDaddy is being called to account for alleged harm to an Illinois resident arising directly from the services GoDaddy provides to its Illinois customers, at least two of whom registered domain names that contributed

to the alleged harm. There is no unfairness in requiring GoDaddy to defend that lawsuit in the courts of the state where, through the very activity giving rise to the suit, it continues to gain so much.").

As a result, it is clear that this Complaint should not be dismissed against Defendant Tropicana for lack of personal jurisdiction.

**B.     DEFENDANTS' MOTION TO DISMISS FOR IMPROPER VENUE SHOULD BE DENIED BECAUSE DEFENDANTS ARE EACH A RESIDENT OF ILLINOIS GIVEN THAT PERSONAL JURISDICTION IS PROPER FOR BOTH DEFENDANTS, BECAUSE A SUBSTANTIAL PART OF THE EVENTS AND OMISSIONS OCCURRED IN THIS DISTRICT AND BECAUSE NRT, THE MAIN DEFENDANT THAT IS THE COMMON THREAD LINKING THE CLASS MEMBERS, CONSENTED TO VENUE IN THIS DISTRICT.**

In ruling on a motion to dismiss for improper venue, the court follows the same standard as for a Rule 12(b)(2) dismissal, taking all the allegations in the complaint as true and drawing all reasonable inferences in favor of the plaintiff. *Gouge, Jr. v. CSX Transp., Inc.*, No. 12-CV-1140-DRH, 2013 WL 3283714, at *1 (S.D. Ill. June 28, 2013) citing *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 806 (7th Cir. 2011) (citing *Kochert v. Adagen Med. Int'l, Inc.*, 491 F.3d 674, 677 (7th Cir. 2007)). While Defendant claims otherwise by citing precedent from the Northern District, it is the defendant that has the burden of showing that venue is improper. *Id*. and *Hamilton Mem'l Hosp. Dist. v. Toelle*, No. 12-CV-1004-JPG-PMF, 2013 WL 1130888, at *5 (S.D. Ill. Mar. 18, 2013) citing *Granader v. Peachtree Lane Assocs. (In re Peachtree Lane Assocs.),* 150 F.3d 788, 794 (7th Cir. 1998).

Defendants admit that venue is proper pursuant to 28 U.S.C. § 1391(b) if Plaintiff can demonstrate *any* of the following as true about this District: it is "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . .; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal

jurisdiction with respect to such action." MTD, p. 8. Defendants further admit that "a corporate defendant, such as Tropicana, is a "resident" of any district in which it is subject to the court's personal jurisdiction. *Id*. at (c)(2)." MTD, p. 6, ¶ 2.

First, since the NRT-made machines producing illegal receipts is the thread holding all of Plaintiff's claims together, and NRT has consented to personal jurisdiction in this District, this Court must retain venue. Defendants' arguments that other bases for venue in other districts exists and therefore require transfer ignore the plain language of the venue statute and the permissive nature of the analysis. Plaintiff and the Class have met their burden by showing that venue in the district is proper.

Second, the Complaint must be consulted because all of the allegations in the Complaint must be taken as true and all reasonable inferences must be drawn in Plaintiff's favor. The Complaint states: "Venue is proper in this District because a substantial part of wrongful acts that form the basis of this Complaint occurred in this District and because this Court has personal jurisdiction over both Defendants. Plaintiff is himself a resident of this District as are many of the Class members." Compl., ¶ 29. As discussed in the earlier personal jurisdiction analysis, both Defendants are subject to this Court's personal jurisdiction, making them residents of this state. If a defendant is subject to the personal jurisdiction of a particular state, then it shall be deemed to reside in any judicial district in that state for purposes of 28 U.S.C. § 1391(b)(1), making them both residents of this District. *In re Pradaxa (Dabigatran Etexilate) Products Liab. Litig.*, No. 3:12-CV-60004-DRH, 2013 WL 3791509, at *3 (S.D. Ill. July 18, 2013).

Third, as the Complaint and the foregoing subpart on personal jurisdiction makes entirely clear, a substantial part of the events or omissions occurred in this District because it is located less than a third of a mile from the offending casino, luring Illinois residents, such as Plaintiff and

many of the Class members, to visit the casino and receive illegal receipts displaying sensitive account information from their ATMs. Indeed, Defendants actually have committed tortious actions within the physical border of Illinois. When an offending receipt is generated, the mere existence of an illegal receipt creates an ongoing violation of the federal statute prohibiting such conduct as the patron experiences a continuous and significant risk of identity theft. Therefore, when any of these receipts are brought into Illinois, the illegal act is actually occurring with consequent ongoing risks in Illinois. As the attached <u>Exhibit C – Declaration of Dustin Isenhart</u> demonstrates, the offending receipt was only generated in Missouri for a short amount of time before it was transported to and remained in Madison County, Illinois for a much longer duration. As a result, Plaintiff, certainly like other members of the Class, are placed at risk of identity theft in Illinois. The fact that offending receipts issued to the casino's customers would be brought into Illinois is something that Tropicana certainly should not find surprising.

**C.     DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION SHOULD BE DENIED BECAUSE PLAINTIFFS HAVE SUFFERED A CONCRETE INJURY IN THE FORM OF DEFENDANTS VIOLATING THEIR RIGHT TO HAVE FACTA-COMPLIANT RECEIPTS ISSUED TO THEM, MAKING THEM MORE SUSCEPTIBLE TO IDENTITY THEFT. THEY HAVE ALSO SUFFERED ACTUAL DAMAGES, WHICH HAVE BEEN PROPERLY ALLEGED AND MAY BE FURTHER PROVEN THROUGH EXPERT TESTIMONY.**

Defendants claim that their Motion to Dismiss for Lack of Subject-Matter Jurisdiction is supported by the United States Supreme Court's Ruling in *Spokeo, Inc. v. Robins*, 136 S.Ct. 1550, 1549 (2016). Defendants misinterpret the Supreme Court's ruling, which unmistakably found that a real risk of harm can satisfy the requirement of concreteness for Article III standing ("This does not mean, however, that the risk of real harm cannot satisfy the requirement of concreteness."). *Id*. at 1549. There are circumstances in which Congress may "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *Id*. citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 578, 112 S.Ct. 2130, 119 L.Ed.2d 351. The Court

goes on to say, "The violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. … a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Id*. (emphasis in original). Using defamation laws as an example, the Court states, "the law has long permitted recovery by certain tort victims even if their harms may be difficult to prove or measure." *Id*.

In other words, just as Plaintiff forecast that it would in his Response in Opposition to Defendants' Motion to Stay, the Supreme Court's ruling in *Spokeo* did not impact this litigation in any meaningful way. It did not change the law. Concreteness was always a requirement of standing, and Plaintiff's standing is summed up well in the Complaint: "By requesting statutory damages, Plaintiff and the Class members merely seek to exercise their right to not have to prove their individual and collective actual damages, and they expressly state that they have been harmed, both by being denied their legal right to receive a FACTA-compliant receipt and at least in the other ways described above." Compl., ¶ 27.

Unfortunately, Defendants misrepresent the facts of actual harm alleged to have been inflicted upon both Plaintiff and the Class. The risk of real harm and the actual, current harm to Plaintiff and the Class members are alleged in the Complaint and are sufficient to confer Article III standing. Simply by generating a receipt that is not FACTA-compliant, Plaintiff and the Class members are at a greater risk of identity theft. In other words, the mere existence of a receipt that is not FACTA-compliant creates a risk of harm because it can be appropriated and misused. To provide greater detail even at the pleading stage, Plaintiff made extensive, specific allegations in the Complaint. To be crystal clear, below is every allegation of potential or actual harm:

- "By failing to comply with FACTA's truncation requirement and printing private, protected information on receipts, Defendants have willfully and recklessly violated the law and failed to protect Plaintiff and the Class members against identity theft and debit and credit card fraud. By printing more digits on the receipt than should have been printed, Defendants have

actually harmed Plaintiff and the Class members because Defendants have increased the risk that Plaintiff and the Class members can become victims of credit and debit card fraud by providing "a piece of the puzzle that would assist a wrongdoer in committing fraud.""[9] Compl., ¶ 21.

- "Indeed, the United States Court of Appeals, Seventh Circuit, citing to FACTA expert Don Coker, identified the harm unleashed upon society by violating FACTA: extra information found on receipts "can be used to bolster the credibility of a criminal who is making pretext calls to a card holder in order to learn other personal confidential financial information. Expiration dates are solicited by criminals in many e-mail phishing scams ..., are one of the personal confidential financial information items trafficked in by criminals ..., are described by Visa as a special security feature ..., [and] are one of the items contained in the magnetic stripe of a credit card, so it is useful to a criminal when creating a phony duplicate card.""[10] Compl., ¶ 22.

- "In addition, exposing more digits of a credit or debit card number than allowed by FACTA is harmful because sophisticated hackers can then more easily exploit these numbers to predict all of the numbers in a given credit card or debit card by using the logic of the algorithms upon which credit and debit cards are based (such as the Luhn algorithm) or even more innovative methods that are continually being developed in our society."[11,12] Compl., ¶ 23.

- "Mr. Coker, the same expert cited above by the Seventh Circuit, also points out that, since a typical consumer has nine credit cards, "a typical consumer could be at risk for at least $450.00 (9 X $50.00) plus the time and effort required in order to notify all nine credit card companies (most likely multiple times), plus the time and effort required in order to notify all three credit bureaus (most likely multiple times), plus have to monitor very closely their future credit card statements in future months in order to make sure that all charges are legitimate, as well as monitor their credit card accounts to make sure that the terms of their accounts were not changed for the worse as a result of the criminal activities, and also monitor their credit report in order to insure that the criminal did not create any new fraudulent credit card or other accounts. Clearly, it would be a lot easier if all merchants would simply comply with the clear legal requirements of FACTA and make life tougher for criminals.""[13] Compl., ¶ 24.

- "In other words, because Plaintiff and the Class members are now potential victims of identity fraud, they now have the stress and expense (both in time and money) of having to take remedial measures. For example, in addition to the other problems discussed above, Plaintiffs' need to constantly check their credit and pay for credit monitoring services. Plaintiffs should take remedial measures, too. As Mr. Coker elaborates: "An October 22, 2007, article in Information Week magazine states that a study just released by Utica College's Center for Identity Management

---

[9] Quotation from a Federal District Court when referencing the statements of Mr. Patrick Faith, the Vice President of Encryption and Authentication Processing for Visa U.S.A. Inc. See *Ramirez v. Midwest Airlines, Inc.*, 537 F. Supp. 2d 1161, 1167 (D. Kan. 2008).

[10] *Redman v. RadioShack Corp.*, 768 F.3d 622, 626-27 (7th Cir. 2014) citing Don Coker, "Credit Card Expiration Dates and FACTA," HGExperts.com, www.hgexperts.com/article.asp?id=6665.

[11] "A $10 Tool Can Guess (And Steal) Your Next Credit Card Number," Wired, November 24, 2015, https://www.wired.com/2015/11/samy-kamkar-10-dollar-tool-can-guess-and-steal-your-next-credit-card-number/.

[12] "How Credit Card Numbers Work," Nick Berry of Data Genetics, Gizmodo, January 8, 2014, http://gizmodo.com/how-credit-card-numbers-work-1493331190.

[13] *Matthews v. United Retail Incorporated*, 1:07-cv-02487, Doc. 34, Att. 1, Ex. 9, 2007 WL 7212657, ¶ 10 (N.D. Ill. January 2, 2008).

and Information Protection stated that the average overall loss from an identity theft event is $31,356. And it is a fact that these losses are a reduction of profits for whoever has to absorb them, and that they are reflected in higher prices for everyone that purchases goods and services."[14] That $31,356.00 that Plaintiff and the Class members are now more likely to suffer due to Defendants' failures was stated in 2007 dollars." Compl., ¶ 25.

- "By requesting statutory damages, Plaintiff and the Class members merely seek to exercise their right to not have to prove their individual and collective actual damages, and they expressly state that they have been harmed, both by being denied their legal right to receive a FACTA-compliant receipt and at least in the other ways described above." Compl., ¶ 27.

- "The publication of only the last four or five digits of a customer account number significantly limits the extent to which a potential identity thief can effectively use customer receipts disseminated at the point of sale to facilitate identity theft." Compl., ¶ 60.

- "Therefore, the failure of the Defendants to truncate the Plaintiffs' card information means that Defendants failed to significantly limit the Plaintiffs' risk of identity theft as the law intended." Compl., ¶ 61.

- "After the effective date of the statute, Defendants, at the point of sale or transaction, provided to Plaintiff and each Class member one or more electronically printed receipts failing to comply with the truncation requirement." Compl., ¶ 65.

- "In addition, Tropicana knew (and NRT at least should have known) that these receipts were being discarded on and nearby the ATMs, making them ready targets for "carders" or "dumpster divers.""[15] Compl., ¶ 67.

At the end of the Complaint, Plaintiff specifically makes a request: "A. For statutory damages of $100 to $1,000 per violation; B. In the alternative, only if statutory damages under FACTA are determined to be invalid, illegal, unenforceable or otherwise ineffective for Plaintiff and the Class members under the facts as presented in this Complaint, Plaintiffs request actual damages, which may be determined on a class level by means of expert testimony." among other forms of relief. Compl., Prayer for Relief.

Once again, because of this alternative prayer for relief, Plaintiff predicted in his brief opposing a stay that Defendants will be forced to litigate this case even if *Spokeo* comes down

---

[14] Cites to the same citation as the previous footnote.
[15] See Robin Sidel, "Identity Theft – Unplugged – Despite the High Tech Treat, When You Get Ripped Off It's Usually Still the Old Way," Wall Street Journal, Oct. 5, 2006, p. B1 for more on these types of thieves.

hard against statutory damages as a remedy because actual damages would remain an available remedy. *Tremble v. Town & Country Credit Corp.*, No. 05 C 2625, 2006 WL 163140, at *3 (N.D. Ill. Jan. 18, 2006) (FACTA "unambiguously allows recovery of any actual damages sustained *or* damages of not less than $100 or more than $1000. The provision is worded in the disjunctive; "or" means or."). Fortunately, for Plaintiff and the Class, given the clear language provided by *Spokeo*, statutory damages (the right to not have to prove damages other than that Plaintiff and the Class now face a higher risk of identity theft) are still available, and so are actual damages. However, given Plaintiff's alternative pleading, even if this Court disagrees that statutory damages remain an option, Plaintiff is allowed to continue to discovery to prove his actual damages. See *Aliano v. Amerigas Partners, L.P.*, No. 07 C 4110, 2008 WL 4671716, at *2 (N.D. Ill. Oct. 22, 2008) (granting the plaintiffs' motion for leave to amend to plead actual damages in the form of out-of-pocket costs for credit monitoring services under FACTA when statutory damages were eliminated as an option).

Defendants try to claim that Plaintiff's receipt was presumably not intercepted by identity thieves – yet. MTD, pp. 10-11. Plaintiff need not lay out his entire case in his Complaint at this stage of the litigation, but Plaintiff is being forced to preserve a receipt that is not FACTA-compliant for purposes of this litigation. There are a variety of ways that it could be stolen, even now. Again, the mere existence of a receipt that is not FACTA-compliant creates a risk of harm because it can be appropriated and misused. Even after this litigation is complete, Plaintiff is still deprived of the right to keep an original receipt for his records without fearing the potential harm that may be inflicted by identity thieves. These receipts bearing confidential, potentially harmful information should not even exist. Furthermore, as Plaintiff demonstrates in his Complaint, members of the Class have, in fact, left their receipts out in and around the casino for anyone to

appropriate and misuse, not understanding the risk of harm that Congress was trying to prevent when it ordered that receipts be appropriately truncated. Compl., ¶¶ 45-48.

Despite the clear non-impact that *Spokeo* has had on this case, Defendant cites to *Gubala v. Time Warner Cable, Inc.*, a case that does not even involve a violation of FACTA or the FCRA for that matter. The complaint alleged that this practice violated 47 U.S.C. § 551(e) (subsection e of the Cable Communications Policy Act, or "CCPA"), and there was no allegation that the plaintiff was exposed to a greater risk of identity theft or had even suffered actual harm, unlike here. *Gubala v. Time Warner Cable, Inc.*, No. 15-CV-1078-PP, 2016 WL 3390415, at *1 (E.D. Wis. June 17, 2016). Furthermore, unlike in *Gubala*, the offending information actually was unleashed to the world in the form of a paper receipt for both Plaintiff and the Class members, many of which were left on and around the ATM. See Compl., ¶¶ 45-47 and Compl., Ex. B. There is a reason that FACTA was created, and it was to prevent a greater chance of identity theft by printing receipts like this. Compl., ¶ 5.

Defendants, who undoubtedly did extensive research, completely fail to mention *Altman v. White House Black Mkt., Inc.*, No. 1:15-CV-2451-SCJ, 2016 WL 3946780 (N.D. Ga. July 13, 2016), which actually does involve FACTA. In that case, the plaintiff similarly received a receipt displaying more than the five digits of his credit card allowed by FACTA (10 instead of 5), and the plaintiff did not even bother to allege actual damages and instead only plead for statutory damages. *Id*. at *1. The defendant moved to dismiss the complaint after the *Spokeo* decision was issued on the grounds that there is no Article III standing, which the Court denied. *Id*. at *6. Notably, the plaintiff argued that, "**as determined by Congress, once private information is exposed, harm has already occurred regardless of whether that injury is compounded by a resulting credit card fraud.**" *Id* at *5 (emphasis supplied). The Court agreed, finding, "After

review, the Court is unable to uphold Defendant's argument and as stated above, finds that the first element of Constitutional standing is satisfied in that here, Plaintiff has sufficiently alleged in her Complaint that she suffered an injury in fact–an invasion of a legally protected interest which is concrete and particularized, and actual or imminent, not conjectural or hypothetical. The Court finds that the fallacy of Defendant's argument is that it does not address the role of Congressional findings." *Id.* at *6. Defendants in this case commit the exact same fallacy, disregarding Congressional findings.

The case law suggesting that this case should not be dismissed does not end at *Altman*. In another FACTA case, *Guarisma v. Microsoft Corp.*, Guarisma received a printed receipt bearing the first six digits of his credit card account number, along with the last four digits. *Guarisma v. Microsoft Corp.*, No. 15-24326-CIV, 2016 WL 4017196, at *1 (S.D. Fla. July 26, 2016). Once again, the Court refused to dismiss plaintiff's FACTA complaint on the grounds that the plaintiff lacked Article III standing, holding that "Because: (1) the FACTA created a substantive legal right for Guarisma and other consumers to receive printed receipts truncating their personal credit card numbers, and thus protecting their financial information; and (2) Guarisma personally suffered a concrete harm in receiving a receipt that violated this statute, Guarisma has sufficiently alleged an injury-in-fact so as to confer standing." *Id.* at *4. In reaching this conclusion, the Court found that "FACTA's legislative history supports the Court's finding Congress desired to create a substantive legal right for consumers to utilize in protecting against identity theft." *Id.*

Finally, in *Kelvin M. Thomas, et al. v. FTS USA, LLC, et al.*, the Court rejected these exact same arguments not on a motion to dismiss, but on a motion for summary judgment, finding that "Contrary to Defendants' position, *Spokeo* did not change the basic requirements of standing."

*Kelvin M. THOMAS, et al. v. FTS USA, LLC, et al.*, No. 3:13-CV-825, 2016 WL 3653878, at *4 (E.D. Va. June 30, 2016).

As these latest decisions demonstrate, district courts across the country are disagreeing with Defendants on FACTA and Article III's standing requirements under *Spokeo*.

**D.    TROPICANA'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM SHOULD BE DENIED BECAUSE THE COMPLAINT MAKES IT CLEAR THAT TROPICANA IS ACTIVELY INVOLVED IN AND PROFITS FROM SELLING NRT'S PAPER MONEY TO ITS PATRONS.**

When reviewing a Rule 12(b)(6) motion to dismiss, the court accepts all allegations as true and draws all reasonable inferences in favor of the plaintiff. *Howard v. Joslin*, No. 01-CV-4088-JPG, 2001 WL 1803708, at *1 (S.D. Ill. May 18, 2001) citing *Holman v. Indiana*, 211 F.3d 399, 402 (7th Cir.), *cert. denied*, 121 S.Ct. 191 (2000). The motion to dismiss should not be granted unless it appears beyond doubt that the plaintiff cannot prove his claim under any set of facts consistent with the complaint. *Id.* at 405. A complaint does not fail to state a claim merely because it does not set forth a complete and convincing picture of the alleged wrongdoing. *Id.* citing *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir.1998); *American Nurses' Ass'n v. State of Illinois*, 783 F.2d 716, 727 (7th Cir.1986). Nor must it allege all, or any, of the facts logically entailed by the claim. *Id.* citing *Bennett*, 153 F.3d at 518; *American Nurses'*, 783 F.2d at 727. The complaint only must provide a short and plain statement of the claim sufficient to fairly put the defendant on notice of the claim and its basis. *Id.* citing *Leatherman v. Tarrant Co. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993); *see also* Fed.R.Civ.P. 8(a).

Tropicana argues that it is not a proper defendant under Plaintiff's Complaint because it claims that it did not accept a credit card or issue a receipt to Plaintiff. Tropicana then goes on to cite exactly one case – *Stelmachers v. Verifone Sys.*, No. 5:14-cv-04192-EJD, 2015 WL 8027902 (N.D. Cal Dec. 7, 2015) – for the proposition that a defendant is not a "person" under FACTA unless facts establish that a defendant "served as a merchant during the transaction at issue." MTD,

p. 18, ¶ 1. The Complaint makes it clear that Tropicana (in addition to NRT) makes these ATMs available to have paper money used on its tables and elsewhere at its facility (Compl., ¶ 37), that Tropicana receives a portion of the $5.00 ATM transaction fee each time the ATM is used (Compl., ¶¶ 40-41), that Tropicana assists with NRT's transactions so that Tropicana can benefit from them (Compl., ¶ 42), that Tropicana ignored FACTA compliance warnings (Compl., ¶ 43), that money from the ATMs actually went to Tropicana (Compl., ¶ 44), and that Tropicana ignored and left receipts lying around for anyone to pick up, even after the ATMs were serviced by staff (Compl., ¶ 45-46).

Obviously, the Complaint establishes that Tropicana "served as a merchant during the transaction at issue." *Stelmachers v. Verifone Sys.*, the sole case that it cites to claims that these hefty statements from the Complaint are inadequate actually did not pin liability on the point-of-sale manufacturer **but instead on the taxi cab company that used the credit card processing device in the taxi**. *Stelmachers v. Verifone Sys., Inc.*, No. 5:14-CV-04912-EJD, 2015 WL 8027902, at *3 (N.D. Cal. Dec. 7, 2015) ("Instead, it appears VeriFone only manufactured the machine that processed Plaintiff's credit card payment."). In other words, if we swapped the parties in that case for the parties in this case, the Court dismissed the equivalent of NRT but left the equivalent of Tropicana in the suit. The reason that it did so is because "Plaintiff merely concludes that VeriFone is a "person" under the FACTA statute, but does not provide factual allegations as to how VeriFone served as a merchant during the transaction at issue." *Id*. In addition to providing all of the reasons above that Tropicana is a "merchant", the Complaint also alleges that NRT is not merely a manufacturer but is actively involved in processing the payments, something that NRT implicitly concedes by not attempting to dismiss itself from this suit on the same grounds (on the grounds that it is not a "merchant"). Accordingly, Defendants' motion on this basis fails.

**E.** **DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM SHOULD BE DENIED BECAUSE PLAINTIFF'S COMPLAINT CLEARLY DEMONSTRATES THAT DEFENDANTS' VIOLATION OF FACTA WAS WILLFUL GIVEN THAT NRT ACTUALLY FILED A DEFAMATION LAWSUIT AGAINST A COMPETITOR FOR WARNING IT THAT IT WAS VIOLATING FACTA, GIVEN THAT IT IS ALLEGED TO HAVE REPLICATED A COMPETITOR'S ATMS IN A WAY TO MAKE THEM NO LONGER FACTA-COMPLIANT, GIVEN THE NUMEROUS WARNINGS FROM THE GOVERNMENT AND THIRD-PARTY ENTITIES, AND GIVEN THAT THE RECEIPTS REGULARLY SAT OUT FOR TROPICANA EMPLOYEES TO INSPECT.**

Once again, given that this is a motion to dismiss based upon a failure to state a claim, all of the allegations in the Complaint must be taken as true, and the Plaintiff benefits from all reasonable inferences that can be drawn from those allegations. Defendants allege that their violation was not willful because the Complaint does not establish that their conduct was either knowing or reckless. Ironically, they make empty and conclusory statements all the while claiming that the Complaint only "consists of nothing more than conclusory allegations of willfulness based on speculative statements that the Defendants knew of FACTA's requirements and somehow knowingly ignored them." MTD, pp. 18-19. That is patently false, since the Complaint alleges the following:

- NRT actually sued a competitor, Everi Payments, Inc. ("Everi"), for defamation **in 2014** after NRT admitted that former, current and potential customers and at least one financial institution, Capital One, informed NRT that it was alleged to not be FACTA-compliant. Compl., ¶¶ 66, 81, 84. Obviously, given the facts of this case, NRT never bothered to fix its non-compliance but instead covered it up.

- NRT even admitted that it lost customers because it was alleged not FACTA compliant. Compl., ¶ 85.

- Defendants' direct competitors, such as Everi, Hollywood Casino and the Casino Queen ensured that they are FACTA-compliant. Compl., ¶¶ 66, 77-78, 87.

- Everi even sued NRT for cloning Everi's ATMs. NRT appears to have cloned everything but Everi's FACTA compliance, which would mean that NRT inexplicably made a conscious choice to take compliant ATMs and make them non-compliant. Compl., ¶¶ 78-79.

- "The amount of account digits are not printed accidentally; the equipment and software used to print the receipts and electronically store an image of the same must be programmed to display certain information, and likewise, programmed not to display certain information." Compl., ¶ 86.

- Defendants are leaders in their respective markets, require sophisticated business expertise to operate in the gaming ATM markets, regularly employ sophisticated in-house employees and outside counsel who would have or should have alerted Defendants of the enactment of FACTA and the need to comply. Compl., ¶ 66.

- They purposely subject themselves to FACTA by the nature of their business and should be complying with multiple guidelines and regulations, they regularly receive industry trade publications and attend industry conferences in which FACTA would have been a topic, they receive FTC guidance letters and other government regulators in which FACTA would have been a topic and they received Visa, American Express, Discover and MasterCard Merchant Regulations in which FACTA would have been a topic. Compl., ¶¶ 6-20, 43, 66, 72-75.

- In Tropicana's case, the offending discarded receipts actually ended up strewn in and around the casino, which employees had years to inspect in order to recognize the compliance failure, in addition to all of the notice Tropicana was given as noted above. Compl., ¶ 44-48, 67. Such receipts were consistently ignored by Tropicana's staff even during and after the staff's servicing of the ATMs. Compl., ¶ 46.

As this Court can see, the claim that Plaintiff makes "conclusory allegations of willfulness" based on "speculative statements" of Defendants' knowledge and recklessness is simply untrue. Furthermore, the Complaint does not allege that notice of the violations was merely provided – "communicated generally to companies like Defendants" (MTD, p. 20, ¶ 2), but Plaintiff specifically states in the Complaint that this notice was provided to the Defendants themselves. See above citations to Complaint. This is in sharp contrast to Defendants' case law, of which Defendants admit: "While some courts have found these types of allegations sufficient, the better-reasoned decisions found that "the fact that information about FACTA was available to [defendant] does nothing to support [plaintiff]'s naked assertion that [defendant] was notified of FACTA's provisions *and knowingly ignored them.*"" Id. Again, Plaintiff clearly states that Defendants were provided notice of their FACTA non-compliance and did nothing to remedy it.

After misrepresenting the Complaint, Defendants attempt to lean on their partial compliance with FACTA to save them, daring Plaintiff to reconcile that with the clear examples set forth in the Complaint. MTD, p. 21, ¶ 1. Plaintiff made very specific allegations that prove Defendants' knowledge and recklessness. None of the cases cited by Defendants approximate the

strong and unique facts demonstrating knowledge and recklessness in this case. By way of example only, not one of the cases cited by Defendants involves a situation where a FACTA defendant literally sued a competitor to prevent it from talking about the defendant's lack of FACTA compliance and reverse-engineered that competitor's machines in every way *but* making those machines FACTA-compliant (when they originally were).

Finally, conflating its motion to dismiss for lack of subject-matter jurisdiction with its 12(b)(6) motion, Defendants claim no actual damage has occurred. As discussed, *supra*, Plaintiff has clearly plead that actual damage occurred, and Defendants' motion to dismiss the claims for actual damage on these grounds must be denied.

## CONCLUSION

As the foregoing demonstrates, Defendants' motions fail under the facts as currently alleged under applicable state and federal law.

In the alternative that the Court does not want to rule on the submitted written materials and instead wishes to hold an evidentiary hearing, Plaintiff respectfully requests leave to conduct discovery on personal jurisdiction.

Dated:    August 15, 2016                          Respectfully submitted,

**HOLLAND LAW FIRM**

By:   */s/ R. Seth Crompton*
       R. Seth Crompton
       300 N. Tucker, Suite 801
       St. Louis, MO 63101
       Phone:        (314) 241-8111
       Facsimile:   (314) 241-5554
       Email:        scrompton@allfela.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that, on August 15, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties to this action.

*/s/ R. Seth Crompton*