Neutral
As of: January 30, 2017 9:00 PM EST

## *Gubala v. Time Warner Cable, Inc.*

United States Court of Appeals for the Seventh Circuit

January 4, 2017, Argued; January 20, 2017, Decided

No. 16-2613

**Reporter**
2017 U.S. App. LEXIS 1058 *

DEREK **GUBALA**, individually and on behalf of all others similarly situated, Plaintiff-Appellant, v. TIME WARNER CABLE, INC., Defendant-Appellee.

**Prior History:** [*1] Appeal from the United States District Court for the Eastern District of Wisconsin. No. 15 C 1078 — Pamela Pepper, Judge.

*Gubala v. Time Warner Cable, Inc., 2016 U.S. Dist. LEXIS 79820 (E.D. Wis., June 17, 2016)*

## Core Terms

subscriber, cable, personal information, destroy, cable operator, disclosure, violations, damages, cable service, concrete

## Case Summary

### Overview

HOLDINGS: [1]-Even if a cable provider might have violated *47 U.S.C.S. § 551(e)* by failing to destroy a former subscriber's personally identifiable information, the standing requirement of *U.S. Const. art. III, § 2, cl. 1* was not met because the subscriber's complaint seeking injunctive relief lacked allegations or evidence of any concrete injury that had resulted or was likely to result from the company's retention of the information; [2]-The case law made no distinction between substantive and procedural statutory violations for purposes of constitutional standing, and in any event, a failure to comply with a statutory requirement to destroy information could be considered a substantive violation; [3]-The disclosure provisions in *§ 551(d)* qualified the duty of a cable provider under the *Cable Communications Policy Act* to destroy a subscriber's personal information.

### Outcome

Judgment affirmed.

## LexisNexis® Headnotes

Constitutional Law > The Judiciary > Case or Controversy > Advisory Opinions

Constitutional Law > ... > Case or Controversy > Standing > Elements

Civil Procedure > ... > Justiciability > Case & Controversy Requirements > Actual Controversy

*HN1*[⬇] *U.S. Const. art. III, § 2, cl. 1* authorizes the federal judiciary only to decide cases or controversies (the two terms have been treated as synonyms) arising under federal law or within the diversity jurisdiction. The term "cases or controversies" appears to (and has long been held to) exclude advisory opinions. Even if there is a case—a lawsuit—it is not justiciable under federal law unless the plaintiff has a concrete interest in prevailing in the case, for such an interest is the sine qua non of standing to sue. Standing is not an ingenious academic exercise in the conceivable, but requires, at the summary judgment stage, a factual showing of perceptible harm.

Constitutional Law > ... > Case or Controversy > Standing > Elements

*HN2*[⬇] U.S. Const. art. III standing requires a concrete injury even in the context of a statutory violation.

Business & Corporate Compliance > ... > Communications Law > Federal Acts > Cable Communications Policy Act

Business & Corporate Compliance > ... > Overview & Legal Concepts > Privacy > Cable Communications



EXHIBIT A

*HN3*[ ] A violation of *47 U.S.C.S. § 551(e)* is a violation of a right of privacy. Violations of rights of privacy are actionable, but there is no indication of any violation of a plaintiff's privacy where there is no indication that the cable company has released, or allowed anyone to disseminate, any of the plaintiff's personal information in the company's possession.

Business & Corporate Compliance > ... > Communications Law > Federal Acts > Cable Communications Policy Act

Business & Corporate Compliance > ... > Overview & Legal Concepts > Privacy > Cable Communications

*HN4*[ ] The duty of a cable provider to destroy a subscriber's personal information is qualified by the reference in 47 U.S.C.S. § 551(e) to § 551(d), which authorizes disclosure of such information if necessary to render, or conduct a legitimate business activity related to, a cable service or other service provided by the cable operator to the subscriber, or if made pursuant to a court order authorizing such disclosure, if the subscriber is notified of such order by the person to whom the order is directed. And disclosure of the names and addresses of subscribers to any cable service or other service is also permitted if the cable operator has provided the subscriber the opportunity to prohibit or limit such disclosure, and the disclosure does not reveal, directly or indirectly, the extent of any viewing or other use by the subscriber of a cable service or other service provided by the cable operator, or the nature of any transaction made by the subscriber over the cable system of the cable operator; or to a government entity as authorized under 18 U.S.C.S. chs. 119, 121, or 206, except that such disclosure shall not include records revealing cable subscriber selection of video programming from a cable operator. These disclosure provisions presuppose the right and indeed duty of the cable operator to retain rather than destroy subscriber personal information for specified reasons.

**Counsel:** For DEREK *GUBALA*, individually and on behalf of all others similarly situated, Plaintiff - Appellant: Joseph Siprut, Attorney, SIPRUT PC, Chicago, IL.

For TIME WARNER CABLE, Defendant - Appellee: Bryan A. Merryman, Attorney, Julian A. Lamm, Attorney, WHITE & CASE, LLP, Los Angeles, CA.

For NATIONAL ASSOCIATION OF CONSUMER ADVOCATES AND PUBLIC JUSTICE, Amicus Curiae: Courtney L. Weiner, Attorney, LAW OFFICE OF COURTNEY WEINER, PLLC, Washington, DC; Daniel A. Schlanger, KAKALEC & SCHLANGER, New York, NY.

For ELECTRONIC PRIVACY INFORMATION CENTER, Amicus Curiae: Marc Rotenberg, Attorney, ELECTRONIC PRIVACY INFORMATION CENTER, Washington, DC.

For RYAN PERRY, Amicus Curiae: Ryan D. Andrews, Attorney, J. Aaron Lawson, Attorney, Roger Perlstadt, Attorney, EDELSON P.C., Chicago, IL.

**Judges:** Before POSNER, EASTERBROOK, and SYKES, Circuit Judges.

**Opinion by:** POSNER

## Opinion

POSNER, *Circuit Judge.* Time Warner Cable provides Internet access, television programming, and other online services to residences via cable. The plaintiff, Derek *Gubala*, subscribed to Time Warner's cable services in 2004 and as required provided [*2] Time Warner with his date of birth, home address, home and work telephone numbers, social security number, and credit card information. Two years later, however, he cancelled his subscription and eight years after that (2014), upon inquiring of Time Warner, learned that all the information he'd given it when he'd subscribed to its residential services a decade earlier remained in the company's possession. And in apparent (though, as explained later in this opinion, not certain) violation of federal law, none of it had been destroyed.

*Gubala* filed this class-action suit against Time Warner Cable seeking injunctive relief (originally damages as well, but that claim has been abandoned) for alleged violations of *47 U.S.C. § 551(e)*, the subsection of the Cable Communications Policy Act which provides that a cable operator "shall destroy personally identifiable information if the information is no longer necessary for the purpose for which it was collected and there are no pending requests or orders for access to such information [either by a cable subscriber, seeking access to his own information] ... or pursuant to a court order."

The district judge dismissed the suit on the ground that the plaintiff lacked [*3] standing to bring it. As an alternative ground for dismissal she ruled that even if the plaintiff had standing, he'd failed to state a claim upon which relief could be granted. He couldn't be given an injunction, the only remedy he sought, because he had an adequate remedy at law—namely damages, authorized by *section 551(f) of the Cable Act*—that he had failed to seek.

We can assume at least tentatively that Time Warner had violated the statute by failing to destroy the personally identifiable information of a person who had subscribed to its

service a decade earlier and had canceled his subscription after two years. *Gubala* knew of the violation (for he had asked Time Warner whether it had destroyed his personal information and it had replied that it had not), and he may have feared that despite its denial his personal information might have been stolen from Time Warner or sold or given away by it, and if so the recipient or recipients of the information might be using it, or planning to use it, in a way that would harm him. Although it's plausible that he feared this, he never told us that this is what he was worried about. His only allegation is that the retention of the information, on its own, [*4] has somehow violated a privacy right or entailed a financial loss.

There is unquestionably a *risk* of harm in such a case. But the plaintiff has not alleged that Time Warner has ever given away or leaked or lost any of his personal information or intends to give it away or is at risk of having the information stolen from it. It's true that *section 551(f)(1)* of the Cable Communications Policy Act provides that "any person aggrieved by any act of a cable operator in violation of this section may bring a civil action in a United States district court," but *Gubala* has presented neither allegation nor evidence of having been "aggrieved" by Time Warner's violation of *section 551(e)*—no allegation or evidence that in the decade since he subscribed to Time Warner's residential services any of the personal information that he supplied to the company when he subscribed had leaked and caused financial or other injury to him or had even been at risk of being leaked.

All he's left with is a claim that the violation of *section 551(e)* has made him *feel* aggrieved. So a claim for damages would get him nowhere because the damages could not possibly be quantified and anyway are not even alleged, and as for his chosen alternative of seeking injunctive [*5] relief in lieu of damages, having not alleged that he's in fact aggrieved by Time Warner's statutory violation he can no more establish irreparable harm (the condition for obtaining such relief) than harm reparable by an award of damages.

The district judge was right, in these circumstances, to rule that the plaintiff does not have standing to sue. *HN1*[↑] *Article III, section 2, clause 1 of the U.S. Constitution* authorizes the federal judiciary only to decide cases or controversies (the two terms have been treated as synonyms) arising under federal law or within the diversity jurisdiction. The term "cases or controversies" appears to (and has long been held to) exclude advisory opinions, which are authorized under state law in some states, as where a governor asks the state supreme court to advise him on the constitutionality of a proposed statute, a situation in which there is not yet a case because there is not yet a statute. See generally Mel A. Topf, *A Doubtful and Perilous Experiment: Advisory Opinions, State Constitutions, and Judicial Supremacy* (2011).

Even if there is a case—a lawsuit—it is not justiciable under federal law unless the plaintiff has a "concrete" interest in prevailing in the case, for such an interest is the sine qua non of [*6] "standing to sue." *Gubala*'s problem is that while he might well be able to prove a violation of *section 551*, he has not alleged any plausible (even if attenuated) risk of harm to himself from such a violation—any risk substantial enough to be deemed "concrete." See *Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1549 (2016), 194 L. Ed. 2d 635*—also *Braitberg v. Charter Communications, Inc., 836 F.3d 925 (8th Cir. 2016)*, a case very similar to this one, litigated on behalf of the plaintiff by the same lawyer who is representing *Gubala* in the present case. And the type of interest asserted in cases like *Braitberg* and the present case is not enough to establish standing, as otherwise the federal courts would be flooded with cases based not on proof of harm but on an implausible and at worst trivial risk of harm.

In *Lujan v. Defenders of Wildlife, 504 U.S. 555, 566-67, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)*, the Supreme Court said that standing is not

> an ingenious academic exercise in the conceivable, but as we have said requires, at the summary judgment stage, a factual showing of perceptible harm. It is clear that the person who observes or works with a particular animal threatened by a federal decision is facing perceptible harm, since the very subject of his interest will no longer exist. It is even plausible—though it goes to the outermost limit of plausibility—to think that a person who observes or works with animals of a particular [*7] species in the very area of the world where that species is threatened by a federal decision is facing such harm, since some animals that might have been the subject of his interest will no longer exist.

There's nothing like that in this case. We're not even told whether Time Warner has ever been found to have violated *section 551*, or that any other cable company has been, for that matter.

In short, given the requirement of standing, *Gubala* can no more sue than someone who, though he has never subscribed and means never to subscribe to a cable company, nevertheless is outraged by the thought that Time Warner and perhaps other cable companies are violating a federal statute with apparent impunity.

One is put in mind of John Stuart Mill's famous distinction in *On Liberty* (1859) between what he called "self-regarding

acts" and "other-regarding acts." The former involve doing things to yourself that don't harm other people, though they may be self-destructive. The latter involve doing things that do harm other people. Mill thought government had no business with the former (and hence—his example—the English had no business concerning themselves with polygamy in Utah, though they hated it). For all we [*8] can know Time Warner may be losing money by cluttering up its files with old subscription information and opening it to accusations of violating the Cable Communications Policy Act. That's its business. What *Gubala* has failed to show is even a remote probability that Time Warner's rather puzzling conduct is harmful to him.

The standing rule reduces the workload of the federal judiciary, as does the principle of finality that shortstops much litigation, but does so more innocently because the "victims" of the rule are persons or organizations who suffer no significant deprivation if denied the right to sue, as persons barred by the finality rule frequently are. Nor does the standing rule leave the government without means to enforce its rules, in the present example the requirement that the cable company destroy its former subscribers' personal information. Although we're not aware of a law that authorizes the government to enforce *section 551(e)* of the Cable Communications Policy Act, or to provide bounties to private enforcers to enforce it, such a law could be enacted by Congress, and presumably would have been had the limited private enforcement that the doctrine of standing permits proved unable [*9] to achieve reasonable compliance with the Act.

*Gubala* argues in his briefs that the Supreme Court's recent admonishment in *Spokeo, Inc. v. Robins, supra, 136 S. Ct. at 1549*, that HN2[↑] "Article III standing requires a concrete injury even in the context of a statutory violation," applies only to violations of statutory rights that can be categorized as "procedural" rather than "substantive." But a failure to comply with a statutory requirement to destroy information is substantive, yet need not (in this case, so far as appears, did not) cause a concrete injury. Anyway at oral argument *Gubala*'s counsel conceded the irrelevance of his attempted distinction between substantive and procedural statutory violations, acknowledging that it was foreclosed by *Meyers v. Nicolet Restaurant of De Pere, LLC, 843 F.3d 724 (7th Cir. 2016)*, decided after he filed his briefs.

We are mindful of *Gubala*'s further contention, supported by two of the three amicus curiae briefs that have been filed with us in this case, that HN3[↑] a violation of *section 551(e)* is a violation of a right of privacy. Violations of rights of privacy are actionable, but as the third amicus curiae brief points out, there is no indication of any violation of the plaintiff's privacy because there is no indication that Time Warner has released, or allowed anyone to disseminate, [*10] any of the plaintiff's personal information in the company's possession. Had *Gubala* reason to believe the company intends to release any of that information or cannot be trusted to retain it, he would have grounds for obtaining injunctive relief; but he doesn't even argue that there is a *risk* of such leakage.

His strangest argument is that "his personal information [secreted in Time Warner's files] has economic value; the economic value ... was incorporated into the value of Plaintiff's transaction with Defendant; and Defendant's unlawful retention of Plaintiff's personal information ... deprived Plaintiff of the full value of his transaction with Defendant. These facts establish the deprivation of the economic value of Plaintiff's personal information." This is gibberish. Time Warner did not take the plaintiff's personal information away from him; he still has it (unless he tore up his birth certificate, credit card information, etc.); he hasn't been deprived of anything; and he isn't asking Time Warner to return his personal information in its files to him; he is asking it to comply with the statute by destroying the information, an act that if committed is unlikely to have the least [*11] effect on him. Maybe what he's trying to say is that he fears that Time Warner will give away the information and it will be used to harm him and so in retrospect he will think his two years of subscribing to Time Warner's residential cable services a mistake. But he hasn't said *any* of that.

And finally he neglects to mention that HN4[↑] the duty of a cable provider to destroy a subscriber's personal information is qualified by the reference in *section 551(e)* (the destruction provision) to the preceding subsection of the *Cable Act, 551(d)*, which authorizes disclosure of such information if "necessary to render, or conduct a legitimate business activity related to, a cable service or other service provided by the cable operator to the subscriber ... [or if] made pursuant to a court order authorizing such disclosure, if the subscriber is notified of such order by the person to whom the order is directed." And "disclosure of the names and addresses of subscribers to any cable service or other service" is also permitted if the cable operator "has provided the subscriber the opportunity to prohibit or limit such disclosure, and the disclosure does not reveal, directly or indirectly, the extent of any viewing [*12] or other use by the subscriber of a cable service or other service provided by the cable operator, or the nature of any transaction made by the subscriber over the cable system of the cable operator; or to a government entity as authorized under chapters 119, 121, or 206 of title 18, except that such disclosure shall not include records revealing cable subscriber selection of video programming from a cable operator."

2017 U.S. App. LEXIS 1058, *12

These disclosure provisions presuppose the right and indeed duty of the cable operator to retain rather than destroy subscriber personal information for specified reasons. That right and duty qualify the duty of destruction invoked by *Gubala*. But in any event the absence of allegation let alone evidence of any concrete injury inflicted or likely to be inflicted on the plaintiff as a consequence of Time Warner's continued retention of his personal information precludes the relief sought and requires that we affirm the district court's judgment dismissing the plaintiff's suit for want of standing.

End of Document

ROSA TUMIALAN

No *Shepard's* Signal™
As of: January 31, 2017 9:45 AM EST

## *Johnston v. Midland Credit Mgmt.*

United States District Court for the Western District of Michigan, Southern Division

January 26, 2017, Decided

Case No. 1:16-cv-437

**Reporter**
2017 U.S. Dist. LEXIS 12565 *

CHRIS JOHNSTON, Plaintiff, v. **MIDLAND CREDIT MANAGEMENT**, et al., Defendants.

**Notice:** Decision text below is the first available text from the court; it has not been editorially reviewed by LexisNexis. Publisher's editorial review, including Headnotes, Case Summary, Shepard's analysis or any amendments will be added in accordance with LexisNexis editorial guidelines.

## Opinion

### [*1] OPINION

Plaintiff brings an action under the *Fair Debt Collection Practices Act* ("Act"), alleging false, deceptive, and misleading statements in violation of *15 U.S.C. § 1692e*. Defendants are **Midland Credit Management** ("MCM"), Plaintiff's debt servicer, Midland Funding, Plaintiff's debt owner, and Encore Capital Group, their parent company. Defendants have filed a motion to dismiss under *Federal Rule of Civil Procedure 12(b)(1)* and *12(b)(6)*. (ECF No. 31.) Plaintiff has filed a response (ECF No. 33) and Defendants have filed a reply (ECF No. 34).

I.

The relevant facts are not in dispute. Plaintiff incurred credit card debt totaling $1,406.43. He failed to make his monthly payments and defaulted. On February 24, 2016, MCM sent a letter to Plaintiff, which stated that he had been pre-approved for a discount program to pay off his debt and provided him with three repayment options. (Am. Compl. Ex. A, ECF No. 21-1, PageID.131.) The first option listed a discount rate of 90% and required one payment of $140.64 due on March 25, 2016. (*Id.*) The second option listed a blank discount rate percentage and a monthly payment of $0.00 due on March 25, 2016. (*Id.*) The third option provided monthly payments as low as $50 per month, but requested that the recipient of the letter call for more details. [*2] (*Id.*) At issue is Defendants' statement in the second option. After receiving the letter, Plaintiff retained counsel, who advised Plaintiff to call MCM and indicate that he wanted to proceed with the second option.

Plaintiff followed counsel's advice, and on March 24, 2016, he spoke with two MCM representatives. (ECF No. 21-2, PageID.137, PageID.141.) During the calls, Plaintiff told both representatives that he had spoken with his attorney, who advised him to take the zero-dollar payment option. In response, an MCM customer-service representative explained that there was an error in the letter he received; the second option had not populated correctly. (*Id.* at PageID.142.) The representative also explained that the first option was still available and offered to speak with Plaintiff's attorney about it. (*Id.*) Plaintiff rejected the first option and stated that he only wanted the zero-dollar payment option. (*Id.*) Again, the representative reminded Plaintiff that the second option was an error, but the first option was still available. (*Id.*) Plaintiff once more confirmed that the only option was the 90-percent discount and ended the call. (*Id.*)

Plaintiff's amended complaint alleges that [*3] the second option in the letter was false, misleading, or deceptive, in violation of the Act's *§§ 1692e(10)* and *1692e*. Defendants filed a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure

2

to state a claim upon which relief can be granted under *Rule 12(b)(6)*. Defendants also argue that Plaintiff cannot plead facts to support the requirements of a class action under Rules 23(a) and 23(b).

II.

A. Standing

A plaintiff invoking federal jurisdiction bears the burden of establishing the "irreducible constitutional minimum" of standing under Article III by demonstrating (1) an injury in



Case 3:16-cv-00193-SMY-RJD   Document 110-1   Filed 02/01/17   Page 7 of 10   Page ID #450

Page 2 of 5
2017 U.S. Dist. LEXIS 12565, *3

fact, (2) fairly traceable to the challenged conduct of the defendant, and (3) likely to be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)*. "'It is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.'" *Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547-48 (2016)* (quoting *Raines v. Byrd, 521 U.S. 811, 820 n.3 (1997)*). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, 136 S. Ct. at 1548*. (quoting *Lujan, 504 U.S. at 560*). A concrete injury must be "*de facto*; that is, [it must] actually exist." [*4] *Id.* Simply alleging a "bare procedural violation" does not satisfy the concrete-harm requirement. *Id. at 1550*. Although intangible injuries "can nevertheless be concrete," *id. at 1549*, Plaintiff must suffer "real" and "not abstract" injury, *id. at 1556*. Further, "not all inaccuracies cause harm or present any material risk of harm." *Id. at 1550*.

**B. *Rule 12(b)(6)***

3

Under *Federal Rule of Civil Procedure 8(a)*, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Detailed factual allegations are not required, but "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)* (quoting *Conley v. Gibson, 355 U.S. 41, 47 (1957)*). When assessing a 12(b)(6) motion, the Court must accept all of Plaintiff's factual allegations as true and construe the complaint in the light most favorable to *Plaintiff. Gunasekera v. Irwin, 551 F.3d 461, 466 (6th Cir. 2009)*. The Court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly, 550 U.S. at 570*.

"If, on a motion under *Rule 12(b)(6)* or *12(c)*, matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." *Fed. R. Civ. P. 12(d)*. Defendants attached Plaintiff's [*5] Rule 26(a) disclosures as an exhibit to their motion to dismiss, but only refer to the exhibit to support their 12(b)(1) motion. Therefore, the Court will only consider Defendants' exhibit for the 12(b)(1) motion, and will assess both grounds for relief under the motion-to-dismiss standard.1

1 Plaintiff included the letter and the phone call transcripts as exhibits to his amended complaint. (ECF Nos. 21-1, 21-2.) Under Rule 10(c), the Court will treat those exhibits as part of the complaint.

4

**III.**

**A. Standing**

Defendants argue that Plaintiff has failed to allege a concrete injury. A plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Spokeo, 136 S. Ct. at 1549*. Defendants argue that Plaintiff's amended complaint does just that. Defendants contend that the mistaken language of the letter does not change the fact that Plaintiff owed the full amount of the debt at issue. Defendants also cite recent cases from the United States Courts of Appeals for the Sixth Circuit, *Soehnlen v. Fleet Owners Ins. Fund, 844 F.3d 576 (6th Cir. 2016)*, and the Seventh Circuit, *Meyers v. Nicolet Rest. of De Pere, 843 F.3d 724 (7th Cir. 2016)*, in support.

For claims arising under a federal statute, a plaintiff is "not absolved from showing that the elements of Article III are met." *Soehnlen*, 844 F.3d at 581 (citing [*6] *Loren v. Blue Cross & Blue Shield of Mich., 505 F.3d 598, 606-07 (6th Cir. 2007)*). The Court must determine whether Plaintiff has "'such a personal stake in the outcome of the controversy' as to warrant [his] invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on their behalf." *Id.* (quoting *Warth v. Seldin, 422 U.S. 490, 498-99 (1975)* (internal quotations omitted)). In *Soehnlen*, the Sixth Circuit rejected the plaintiff's claim that a statutory violation established Article III standing. *Id. at 584*. The court opined that, although "the Supreme Court [has] acknowledged that non-tangible injuries, including violations of statutory rights, may satisfy the constitutional showing of an injury-in-fact," the Supreme Court has also cautioned "that 'Congress's role in identifying and elevating

5

intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *Id. at 581*. Thus, even if the Court assumes that Plaintiff's alleged injury is sufficiently particularized, Plaintiff "must still show that the deprivation of a right created by statute is accompanied by 'some concrete interest that is affected by the deprivation.'" *Id.* (quoting [*7] *Spokeo, 136 S. Ct. at 1548*). In other words, an "injury based on a statutory violation must constitute a 'risk of real harm' to the plaintiff."

Case 3:16-cv-00193-SMY-RJD   Document 110-1   Filed 02/01/17   Page 8 of 10   Page ID #451

Page 3 of 5
2017 U.S. Dist. LEXIS 12565, *7

*Id.*

Further, the Seventh Circuit's decision in *Meyers* supports Defendants' argument. In *Meyers*, the Seventh Circuit held that the plaintiff lacked standing, explaining that "Congress does not have the final word on whether a plaintiff has alleged a sufficient injury for the purposes of standing, because 'not all inaccuracies cause harm or present any material risk of harm.'" *Id. at 727* (quoting *Spokeo, 136 S. Ct. at 1550*). "More than a 'bare procedural violation, divorced from any concrete harm' is required to satisfy Article III's injury-in-fact requirement." *Id.* (quoting *Spokeo, 136 S. Ct. at 1549*). The Seventh Circuit explained that

*Spokeo* compelled the conclusion that the plaintiff's allegations were insufficient to satisfy the injury-in-fact requirement. *Id.* Moreover, the court held that the plaintiff's allegations "demonstrate that [he] did not suffer any harm[.] Nor has the violation created any appreciable risk of harm." *Id.*

Here, Plaintiff generally alleges that he has suffered actual damages as a result of Defendants' conduct. (Pl.'s Am. Compl., ECF No. 21, PageID.127-28.) Although Plaintiff

6

claims that he has not been able to put the subject [*8] debt behind him for $0.00 and that other collection attempts in the future may occur, he has not alleged any risk of real harm. *See Clapper v. Amnesty Int'l USA, 133 S. Ct. 1138, 1147 (2013)* (explaining that the Supreme Court has "repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact' and that 'allegations of *possible* future injury' are not sufficient) (quoting *Whitmore v. Arkansas, 495 U.S. 149, 158 (1990)*). The letter's statements do not change the fact that Plaintiff owed this debt. Moreover, Plaintiff has not shown that the risk of future collection attempts is certainly impending. Rather, he simply alleges that collection may occur. This is not enough to establish a concrete injury.

Plaintiff also argues that "his receipt of the false, deceptive and misleading collection letter caused him to keep the letter and seek advise of counsel, thus incurring *de minimis* travel expenses, loss of time to evaluate the letter and call Midland to determine the validity of the offer, as opposed to ignoring it and throwing it in the trash." (ECF No. 38, PageID.298-99.) Plaintiff contends that "the violation and the harm was incurred upon receipt of the subject form letter, and further harm to Plaintiff incurred thereafter in the amount of *de minimis* damages as noted above [*9] in determining whether he could accept Defendants' settlement offer." (*Id.* at PageID.299.) Plaintiff acknowledges that the harm happened upon receipt of the letter-a bare statutory violation. But that alone is not enough to satisfy a concrete injury.

In addition, Plaintiff argues that *Meyers* provides foundation for his *de minimis* harm argument. When the Seventh Circuit held that the plaintiff lacked standing, it noted that the

7

defendant's act "did not affect [the plaintiff's] behavior." *Meyers, 843 F.3d at 728 n.4*. Plaintiff contends that he changed his behavior after receiving the letter, so the *de minimis* damages resulting from that change are sufficient to create actual harm. Again, the fact that Plaintiff sought advice of an attorney does not change the fact that he owed the debt and had a moral obligation to pay it. Although Plaintiff asserts that he would have thrown the letter way, he has not shown any concrete interest affected by Defendants' letter. He still had this debt, and he sought out a way to put it behind him.

Further, Plaintiff does not cite any authority to support a finding of concrete injury for seeking advice of counsel or incurring *de minimis* travel expenses and loss of time. In fact, several circuits have utilized the same analysis as [*10] *Soehnlen* and *Meyers* in post-*Spokeo* cases.

*See Strubel v. Comenity Bank, 842 F.3d 181, 189 (2d Cir. 2016)* ("In the absence of a connection between a procedural violation and a concrete interest, a bare violation of the former does not manifest injury in fact."); *Hancock v. Urban Outfitters, Inc., 830 F.3d 511, 514 (D.C. Cir. 2016)* (no standing where plaintiffs alleged that department store clerk violated District of Columbia consumer protection statutes by asking for their zip codes, but alleged no injury caused by the violation such as "any invasion of privacy, increased risk of fraud or identity theft, or pecuniary or emotional injury"); *Lee v. Verizon Commc'ns. Inc., 837 F.3d 523, 529-30 (5th Cir. 2016)* (no standing where plaintiff alleged breach of a duty under ERISA but no harm caused by the mismanagement of the pension plan); *Braitberg v. Charter Commc'ns, Inc., 836 F.3d 925, 930-31 (8th Cir. 2016)* (no standing where plaintiff alleged that the cable company had retained personal information in violation of Cable

8

Communications Policy Act, but suffered no harm because of it); *Nicklaw v. Citimorgage, Inc., 839 F.3d 998, 1002-03 (11th Cir. 2016)* (no standing where plaintiff alleged that the defendant failed to record a satisfaction of a mortgage within the required 30 days under the state statute but alleged no harm flowing from that failure).

Case 3:16-cv-00193-SMY-RJD   Document 110-1   Filed 02/01/17   Page 9 of 10   Page ID #452

Page 4 of 5
2017 U.S. Dist. LEXIS 12565, *10

Thus, much like *Soehnlen* and *Meyers*, Plaintiff has not pleaded sufficient facts to allow the Court to draw the inference of a concrete injury. If the Court were to accept Plaintiff's [*11] argument, "the federal courts would be flooded with cases based not on proof of harm but on an implausible and at worst trivial risk of harm." See *Gubala v. Time Warner Cable, Inc., No. 16-2613, 2017 U.S. App. LEXIS 1058, at *6 (7th Cir. Jan. 20, 2017)*. Further, a plaintiff would be able to satisfy the concrete-injury requirement simply by consulting an attorney. See *Yucaipa Am. Alliance Fund I, L.P. v. Ehrlich*, Civ. No. 15-373, 2016 WL 4582519 at *8 ("Regarding plaintiffs' argument that the complaint pleads 'concrete financial loss' in the form of 'millions in attorneys' fees and costs,' this alleged injury does not confer RICO standing either.").

Plaintiff also relies on a pre-*Spokeo* case, *Beaudry v. TeleCheck Services, 579 F.3d 702, 706-07 (6th Cir. 2009)*, to argue that he has suffered a legally-recognizable harm by simply receiving a collection letter containing false, misleading or deceptive statements, in violation of *§ 1692e(10)*. But *Beaudry* is inapposite for several reasons. First, it involved a 12(b)(6) motion, so the court's discussion of standing is dicta. Second, "the analysis employed in *Beaudry* was precisely the one found inadequate by the *Spokeo* Court." *Macy v. GC Servs. Lim. P'ship*, No. 3:15-cv-819, 2016 WL 5661525, at *2 n.2 (W.D. Ky. Sept. 29,

9

2016) (noting that the *Beaudry* Court focused on whether the plaintiff's injury was particularized, leaving the question of concreteness unanswered). Finally, the Sixth Circuit has more recently recognized, as did the *Spokeo* Court, "that although Congress may create [*12] new legal rights by statute, a plaintiff must be able to show that she suffered 'a concrete, particularized, and personal injury . . . as a result of the violation of the newly created legal rights' in order to have Article III standing." *Id.* (quoting *Imhoff Inv., LLC v. Alfoccino, Inc., 792 F.3d 627, 633 (6th Cir. 2015)*). Therefore, Plaintiff's reliance on this case is misplaced.

Plaintiff also cites an unpublished district court decision, *Carney v. Goldman, No. 15-260, 2016 WL 7408849, at *5 (D.N.J. Dec. 22, 2016)*, to support his argument. In *Carney*, the plaintiffs alleged an "informational injury" and "a risk of economic injury due to [Defendant's] violation of 1692e of the *FDCPA*." *Id.* at *5. The court held that the plaintiffs had sufficiently alleged an injury-in-fact harm that was both particularized and concrete. *Id.*

But *Carney* is distinguishable. In *Carney*, the defendant violated the Act by demanding an amount for collection costs when those costs were not yet, if at all, due. *Id.* Here, Plaintiff actually owes this debt and it is due. Moreover, in *Carney*, the court held that plaintiffs had satisfied the concrete requirement because there was "a clear *de facto* injury, i.e., the unlawful use of false, deceptive and misleading representations" in connection with defendant's attempts to collect plaintiffs' debt. *Id.* The court explained that "[b]ecause [p]laintiffs have a personal statutory right to be [*13] free from abusive debt-collection practices, and because [p]laintiffs have alleged facts plausibly showing [that the d]efendant violated that right, [p]laintiffs 'need not allege any additional harm.'" *Id.* (quoting *Spokeo*, 136 S. Ct.

10

at 1519). Not only is *Carney* not binding on the Court, it actually contradicts binding Sixth Circuit precedent. See *Soehnlen*, 844 F.3d at 582. For these reasons, *Carney* is not

persuasive.

**B. Failure to State Plausible Claim for Relief**

In addition, Plaintiff has not sufficiently alleged a materially false, deceptive or misleading statement. The Act "prohibits a wide array of specific conduct, but it also prohibits, in general terms, any harassing, unfair, or deceptive debt collection practice, which enables the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed." *Currier v. First Resolution Inv. Corp., 762 F.3d 529, 533 (6th Cir. 2014)*. To determine whether conduct fits within the broad scope of the Act, the conduct is viewed through the eyes of the "least sophisticated consumer." *Id.* This standard recognizes that the Act protects the gullible and the shrewd alike while simultaneously presuming a basic level of reasonableness and understanding on the part of the debtor. *Id.* It assumes that the debt collector's [*14] communication "is read in its entirety, carefully and with some elementary level of understanding." *Fed. Home Loan Mortg. Corp. v. Lamar, 503 F.3d 504, 510 (6th Cir. 2007)*. "It is well-settled that courts may properly make the objective determination whether language effectively conveys a notice of rights to the least sophisticated debtor." *Id. at 508 n.2*.

Reviewing the letter in its entirety, the least sophisticated consumer would realize that the $0.00 payment option was an error. First, the second option listed " OFF," whereas the first option listed "90% OFF." Further, the second option indicated a *first* payment due date

11

of March 25, 2016. This not only shows that an amount was due, but that it could be made over multiple payments, which does not make sense if nothing was due. Finally, the least

sophisticated consumer would understand that giving nothing in exchange for the satisfaction of a debt is not a payment. Thus, Plaintiff has failed to sufficiently allege a materially false, deceptive or misleading statement under the Act.

Likewise, "[a] statement cannot mislead unless it is material, so a false but non-material statement is not actionable." *Miller v. Javitch, Block & Rathbone, 561 F.3d 588, 596 (6th Cir. 2009)* (quoting *Hanh v. Triumph P'ships LLC, 557 F.3d 755, 757 (7th Cir. 2009)*). Although the second option was false, it was not materially false. Because [*15] Plaintiff has failed to sufficiently plead that the statement was materially false, deceptive, or misleading, he also has failed to sufficiently plead that he was materially misled by the statement.

Finally, Plaintiff raises class action claims. Because Plaintiff lacks standing and has failed to plead a plausible claim for relief under the Act, his class action claims are also dismissed.

An order and judgment will enter in accordance with this opinion.

Dated: January 26, 2017 /s/ Robert Holmes Bell

ROBERT HOLMES BELL

UNITED STATES DISTRICT JUDGE

12

End of Document

ROSA TUMIALAN